728 So.2d 1167 (1999)
Jean David PAUL, Petitioner,
v.
Ken JENNE, as Sheriff of Broward County, Florida, and State of Florida, Respondents.
No. 99-295.
District Court of Appeal of Florida, Fourth District.
March 3, 1999.
Alan H. Schreiber, Public Defender, and Diane M. Cuddihy, Chief Assistant Public Defender, Ft. Lauderdale, for petitioner.
Robert A. Butterworth, Attorney General, Tallahassee, and Leslie T. Campbell, Assistant Attorney General, West Palm Beach, for respondents.
TAYLOR, J.
Petitioner Jean David Paul's bond on pending charges of attempted second degree murder was revoked following his arrest for various firearm and drug offenses. He filed this petition for writ of habeas corpus, alleging that the court erred in refusing to set a new bond. For the reasons stated below, we agree and grant the writ.
On June 11, 1998, the state filed an information charging petitioner with attempted second degree murder for the May 22, 1998 shooting of Ricardo Guerrier. Petitioner was released on a $25,000 bond. Approximately six months later, petitioner, while out on bond, was arrested for carrying two concealed firearms, possession of a firearm with an altered serial number, possession of cannabis and possession of drug paraphernalia. The state moved to revoke the petitioner's bond on the original charge and detain him without bond pending trial.
At the hearing on the state's motion to revoke bond, the arresting officer testified that he observed petitioner and four companions smoking marijuana behind a Pembroke Pines movie theater. The group left the area and entered a vehicle. When officers approached the vehicle, petitioner was seated in the driver's seat. As petitioner stepped from the vehicle, several plastic baggies containing marijuana dropped to the ground. A subsequent search of the vehicle revealed a .38 caliber handgun, with the serial number removed, under the driver's seat and a loaded 9 mm handgun in a bookbag behind the front passenger seat. Petitioner admitted to the arresting officer that the guns belonged to him. He explained that he was previously involved in a shooting incident and that he was carrying guns for protection in case the victim of the shooting decided to retaliate. Additionally, petitioner admitted that he was smoking marijuana just before his arrest.
Petitioner testified at the bond revocation hearing. He acknowledged telling the police that the firearms belonged to him, but testified that he did so to protect the true owners, his brother and a friend. He also denied *1168 telling the police that he purchased the firearms for protection from the victim of an earlier shooting. He said he only told the police that he was on bond for another offense and did not want to be re-arrested. The trial judge commented upon the petitioner's low credibility after noting several contradictions in his testimony at the hearing.
Petitioner's father testified that petitioner is an obedient and respectful son, but acknowledged that petitioner gets "wild" when he is out with certain friends. He requested the court to set new bond conditions and expressed confidence in his ability to supervise petitioner if house arrest were ordered.
At the conclusion of the hearing, the state urged the court to revoke petitioner's bond because petitioner was charged with a "dangerous crime" and committed additional serious criminal offenses while out on bond. These circumstances, the state argued, demonstrated that the petitioner posed a threat of harm to the community and that he should be detained without bond. After first finding that petitioner violated pretrial release conditions by not refraining from criminal activity, the court next considered petitioner's application to be admitted to bail pursuant to Florida Rules of Criminal Procedure 3.131(h) and (b). Then, following procedures established by decisional law in this district,[1] the court evaluated the state's proof of the need for pretrial detention under section 907.041(4)(b), Florida Statutes. The court revoked petitioner's bond and remanded him into custody without bond upon concluding that petitioner posed a threat of harm to the community in that: (1) he was presently charged with a dangerous crime; (2) there was a substantial probability that he committed the crime; (3) the factual circumstances of the crime indicated a disregard for the safety of the community; and (4) there were no conditions of release reasonably sufficient to protect the community from the risk of physical harm to persons. Additionally, the court found that petitioner had been convicted of a dangerous crime, i.e., burglary of a dwelling, within ten years of his arrest on the current charge.
In Merdian v. Cochran, 654 So.2d 573 (Fla. 4th DCA 1995), we recognized that Florida Rule of Criminal Procedure 3.131(g)(1) authorizes a trial court to direct the arrest and commitment of a defendant at large on bail when, as occurred here, the defendant breaches a condition of the bond. We decided in Merdian, however, that if recommitment is ordered, the court must reconsider bail and conditions of release pursuant to Rule 3.131(h) and (b).[2] We went a step further in Metzger v. Cochran, 694 So.2d 842, 843 (Fla. 4th DCA 1997), to clarify that a refusal "to impose any conditions of release thereafter constitutes pretrial detention, the need for which the State must prove, § 907.041(4)(f), beyond a reasonable doubt."
Under section 907.041(4)(b) of the statute, the court may order pretrial detention if it finds that any of four enumerated conditions is met. In this case, both parties concede that only the condition in section 907.041(4)(b)4.b. applies. This subsection allows pretrial detention if the court finds that a person accused of committing a dangerous crime[3] "poses the threat of harm to the community" and has a prior conviction "of a dangerous crime within the 10 years immediately preceding the date of his arrest for the crime presently charged."
*1169 Petitioner contends that the state fell short in meeting its burden of proof for pretrial detention under Florida Statute 907.04. He argues that the trial court erred in finding that the petitioner's prior juvenile delinquency adjudication for burglary of a dwelling constitutes a prior conviction for a dangerous crime. Relying on Moody v. Campbell, 713 So.2d 1032 (Fla. 1st DCA 1998), he points out that a juvenile disposition is not included in the definition of a prior "conviction" for purposes of section 907.041(4)(b)4.b.
In Moody, the First District Court of Appeal stated:
Although this appears to be a question of first impression, the courts have found in analogous situations that a juvenile delinquency adjudication is not a "conviction." For example, in J.B.M. v. State,[ 560 So.2d 347 (Fla. 5th DCA 1990)] the court held that a juvenile who committed a delinquent act that would be a felony if committed by an adult did not, when subsequently found to be in possession of a firearm, violate section 790.23(1), Florida Statutes. In general, juvenile delinquency proceedings are neither wholly criminal nor civil in nature. State v. Boatman, 329 So.2d 309, 312 (Fla.1976). For that reason some of the procedural safeguards of adult proceedings, such as the right to a trial by jury, are not applicable in juvenile proceedings. Id. By contrast, the legislature has, in other contexts, spoken to the effect of prior juvenile convictions. See, e.g., §§ 921.0011(5), Fla. Stat. (1997)(sentencing guidelines); 90.610(1)(b)(evidence). The absence of any clarification by the legislature regarding the applicability of juvenile adjudications to section 907.041(4)(b)4.b. points to their exclusion from its scope, especially in light of the rules of statutory construction in criminal proceedings.
Id. at 1033 (citations omitted).
We find the reasoning in Moody persuasive and agree that the legislature's failure to specifically include juvenile adjudications in section 907.041(4)(b)4.b. precludes the state from using a delinquency adjudication to satisfy its burden of proving a prior conviction for a dangerous crime under 907.041(4)(b)4.b.
However, our review of the propriety of the trial court's refusal to set bond in this case does not end there. The state, in its response to the habeas corpus petition filed herein, has requested this court to reconsider Merdian v. Cochran and its progeny and reexamine the rule established in those cases that the trial court has no discretion to refuse readmission to bond upon breach of a bond condition, absent proof of the pretrial detention factors in section 907.041. The state urges us to adopt the Third District Court of Appeal's position recently enunciated in Houser v. Manning, 719 So.2d 307 (Fla. 3d DCA 1998). In Houser, the third district held that once a defendant violates a bond condition, the bond may be revoked without regard to the pretrial detention criteria in section 907.041, and that any new bond is addressed to the sound discretion of the trial court.
Like the petitioner herein, the defendant in Houser was arrested on new charges while out on bond. The trial court revoked the defendant's bond after the defendant violated his bond conditions by carrying a concealed firearm while on pretrial release for armed robbery. Upon finding that no conditions of release would assure the safety of the community, the court denied the defendant's motion to reinstate bond. It rejected the defendant's argument that he was entitled, as a matter of right, to have a new bond set on the original armed robbery charge. In his petition for a writ of habeas corpus, the defendant cited our Merdian decision for the proposition that unless he met the criteria for pretrial detention under section 907.041, Florida Statutes, the court was required to readmit him to bond.
As Houser observes, we discussed the statutory and constitutional authority of courts to withhold bail in Gomez v. Hinckley, 473 So.2d 809 (Fla. 4th DCA 1985). Article I, Section 14 of the Florida Constitution governs the right of an accused to be released on bond. That section, which guarantees pretrial release on reasonable conditions, was amended effective January 1, 1983. Prior to the amendment, the section read:
Until adjudicated guilty, every person charged with a crime or violation of municipal *1170 or county ordinance shall be entitled to release on reasonable bail with sufficient surety unless charged with a capital offense or an offense punishable by life imprisonment and the proof of guilt is evident or the presumption is great.
Art. I, § 14, Fla. Const. (1968). The 1983 amendment modified the existing language and additionally authorized a court to detain a person "[I]f no conditions of release can reasonably protect the community from risk of physical harm to persons, assure the presence of the accused at trial, or assure the integrity of the judicial process." Art. I, § 14, Fla. Const. (1983). Section 907.041, Florida Statutes, implemented the constitutional amendment and established specific criteria for determining whether a defendant may be detained without bond. The codified legislative intent states:
It is the policy of the state that persons committing serious criminal offenses, posing a threat to the safety of the community or the integrity of the judicial process, or failing to appear at trial be detained upon arrest. However, persons found to meet specified criteria shall be released under certain conditions until proceedings are concluded and adjudication has been determined. The Legislature finds that this policy of pretrial detention and release will assure the detention of those persons posing a threat to society while reducing the costs for incarceration by releasing, until trial, those persons not considered a danger to the community who meet certain criteria. It is the intent of the Legislature that the primary consideration be the protection of the community.
Section 907.041(1), Fla. Stat. (1997).
The Houser court reasoned that section 907.041 and the amendment to Article I, section 14 were enacted to expand the court's authority to deny bond in certain situations and were not intended to "cut back on the court's power to enforce bond conditions and revoke bond where bond conditions have been breached." Houser, 719 So.2d at 310-311. According to Houser, the court's inherent authority to revoke bond and deny subsequent bond applications was recognized prior to the 1982 constitutional amendment in Gardner v. Murphy, 402 So.2d 525 (Fla. 5th DCA 1981).
In Gardner, the fifth district granted a petition for habeas relief after the circuit court denied bail to a defendant charged with escape. The defendant's prior record of escape and fleeing convictions strongly indicated that he was a flight risk. However, the court stated that "while it is constitutionally permissible to revoke for cause a reasonable bail already granted and to then deny subsequent applications," the Florida Constitution guarantees reasonable bail to every accused except one charged with a capital or life offense. Id. at 526. Distinguishing between an accused's unconditional right to be released on reasonable bail upon initial arrest and conditional right to release upon future applications following forfeiture of bail, the court noted that "there are situations where Florida's constitutional right to be released on bail can be forfeited upon conduct that `evinces a flagrant disregard of the court's authority or effort to evade its processes'." Id. at 526. One such situation would be a violation of a reasonable condition of bail. The court stated:
The constitution, however, grants reasonable, not unbridled, release. Should a defendant violate a reasonable condition to bail, bail can be revoked. Middleton[ v. Polk, 399 So.2d 1105 (Fla. 5th DCA 1981)]. Having been provided reasonable bail only to violate a condition thereof, a defendant cannot claim he has been deprived of his constitutional right to bail should the trial court reasonably deny subsequent applications for bail.
Id. at 526.
Finding the above language persuasive, the third district followed Gardner in its Houser decision and speculated that our court, having previously cited Gardner with approval in Gomez v. Hinckley, would likewise have followed Gardner and, hence, reached a different result in Merdian had Gardner been cited and argued. The court stated:
Notably absent from Merdian and its progeny ... is any indication that the Fifth District's Gardner decision was argued or considered. This is important because *1171 the Fourth District has previously cited Gardner with approval. See Gomez v. Hinckley, 473 So.2d 809, 810 (Fla. 4th DCA 1985). In Gomez, the court listed Gardner as representing one of the exceptional circumstances in which a defendant could be denied bail, even though not charged with a capital offense or crime punishable by life imprisonment. See id. It may very well be that the Fourth District would follow Gardner if argued by the litigants, but there is no indication that such an argument was made in the Merdian line of cases.
In Gomez v. Hinckley, we briefly referred to Gardner when explaining that prior to January 1, 1983, section 14 of the Florida Constitution "provided that, with rare exception, only persons charged with capital offenses or offenses punishable by life imprisonment could be denied release on bail." Id. at 810. Like Gardner, the Gomez case involved a review of the denial of pretrial bail for a defendant upon his initial arrest on crimes that were neither capital nor life offenses. Since neither case presented the precise issue of denial of bail upon re-arrest and bond revocation following a breach of bond conditions, it is doubtful that we would have relied upon those cases as authority in deciding Merdian, except, perhaps, as a starting point in our analysis of the constitutional principle that persons charged with crimes in Florida have a general right to pretrial release on reasonable conditions.
Houser also cites our decision in State v. Ajim, 565 So.2d 712 (Fla. 4th DCA 1990), for the proposition that "it has been explicitly held that section 907.041 is complementary to, and does not replace, a trial court's already-existing power to deny bail." Id. at 311. In Ajim, we were referring to the trial court's discretion to deny bail, as recognized in State v. Arthur, 390 So.2d 717 (Fla.1980), for crimes punishable by death or life in prison where the proof is evident and the presumption is great. Our intention was to clarify that section 907.041 did not remove a trial judge's discretion to grant or deny bail to a defendant charged with a nonbondable offense. See also State v. Fox, 647 So.2d 1051 (Fla. 5th DCA 1994) (trial judge erroneously believed he lacked discretion to deny bail in an Arthur application absent the specialized showing in 907.041(4)(b)). We took no position in Ajim, however, on the trial court's discretion to deny bond outside of the criteria set forth in Arthur and section 907.041.
Although we agree with Houser that a trial court has the authority to revoke a defendant's bond under pretrial release rules allowing arrest and recommitment for bond violations, and pursuant to the court's inherent power to enforce its own orders, we disagree that a trial court has the absolute discretion to deny bond unless a defendant meets the criteria for detention without bond under the pretrial detention statutes. By breaching a condition of the bond originally set by the court, a defendant forfeits the right to continued release under the terms of that bond. However, the defendant does not forfeit his or her constitutionally guaranteed right to bail altogether; a refusal to readmit a defendant to any bail at all must be subject to the limitations of the pretrial detention statute. Indeed, Florida Rule of Criminal Procedure 3.132(b), which provides that a motion for pretrial detention may be filed at any time prior to trial, contemplates successive bail applications. The rule strongly suggests that it applies not just to release determinations upon initial arrest, but also to bond decisions following rearrests and renewed bail applications.
We continue to hold, as we did in Merdian and Metzger, that the court's authority to deny bond pending trial is circumscribed by the provisions of Florida Statute section 907.041. The legislature has specifically delineated and narrowly limited those circumstances under which bond may be denied. We have no difficulty divining the legislative intent to curtail the court's power to deny bail, except in certain instances, in light of the constitutionally guaranteed right to bail. To effectuate its express policy of assuring the detention of "those persons posing a threat to the safety of the community or the integrity of the judicial process," the legislature enacted a pretrial detention statute, which sets forth a comprehensive list of conditions that will qualify a defendant for *1172 detention without bail.[4] By providing clear and reasonable guidelines for courts to follow in considering denial of this basic and fundamental right, the legislature may very well have been motivated by a desire to achieve uniformity and fairness in judicial determinations of bail entitlement, as well as to provide trial courts with a means of identifying persons whose criminal histories and patterns of behavior signal a danger to society.
For the reasons stated above, we decline to recede from Merdian and its progeny at this time, but certify conflict with Houser.
Because we find that the state did not satisfy its burden of proving requirements for pre-trial detention, we vacate the order for pretrial detention and remand to the trial court for further proceedings consistent with this opinion.
No motion for rehearing will be entertained and the clerk of this court is directed to issue mandate forthwith.
PETITION GRANTED; WRIT ISSUED.
FARMER and STEVENSON, JJ., concur.
NOTES
[1] Lepore v. Jenne, 708 So.2d 980 (Fla. 4th DCA 1998); Blackman v. State, 707 So.2d 820 (Fla. 4th DCA 1998); Surdovel v. Jenne, 706 So.2d 115 (Fla. 4th DCA 1998); Dupree v. Cochran, 698 So.2d 945 (Fla. 4th DCA 1997); Metzger v. Cochran, 694 So.2d 842 (Fla. 4th DCA 1997); Merdian v. Cochran, 654 So.2d 573 (Fla. 4th DCA 1995).
[2] Rule 3.131(b) provides a list of factors for the court to consider when determining whether to release a defendant on bail or other conditions (i.e., weight of the evidence against defendant, defendant's family ties, ties to the community, employment history, financial resources, mental condition, and whether the defendant is already on release pending resolution of another criminal proceeding).
[3] The statute lists "dangerous crimes" as the following: arson; aggravated assault; aggravated battery; illegal use of explosives; child abuse; hijacking; kidnaping; homicide; manslaughter; sexual battery; robbery; car jacking; lewd, lascivious or indecent assault; sexual battery on a child; burglary of a dwelling; attempting or conspiring to commit any such crime; and home invasion robbery.
[4] The court may order pretrial detention if it finds a substantial probability, based on a defendant's past and present patterns of behavior, the criteria in s. 903.046, and any other relevant facts, that:

1. The defendant has previously violated conditions of release and that no further conditions of release are reasonably likely to assure the defendant's appearance at subsequent proceedings;
2. The defendant, with the intent to obstruct the judicial process, has threatened, intimidated, or injured any victim, potential witnesses, juror, or judicial officer, or has attempted or conspired to do so, and that no conditions of release will reasonably prevent the obstruction of the judicial process;
3. The defendant is charged with trafficking in controlled substances as defined by s. 893.135, that there is a substantial probability that the defendant has committed the offense, and that no conditions of release will reasonably assure the defendant's appearance at subsequent proceedings; or
4. The defendant poses the threat of harm to the community. The court may so conclude if it finds that the defendant is presently charged with a dangerous crime, that there is a substantial probability that the defendant committed such crime, that the factual circumstances of the crime indicate a disregard for the safety of the community, and that there are no conditions of release reasonably sufficient to protect the community from the risk of physical harm to persons. In addition, the court must find that at least one of the following conditions is present:
a. The defendant has previously been convicted of a crime punishable by death or life imprisonment.
b. The defendant has been convicted of a dangerous crime within the 10 years immediately preceding the date of his or her arrest for the crime presently charged.
c. The defendant is on probation, parole, or other release pending completion of sentence or on pretrial release for a dangerous crime at the time of the current arrest.
§ 907.041(4)(b), Fla. Stat. (1997).