783 So.2d 1042 (2001)
STATE of Florida, Petitioner,
v.
Jean David PAUL, Respondent.
No. SC95265.
Supreme Court of Florida.
March 29, 2001.
Robert A. Butterworth, Attorney General, Celia Terenzio, Assistant Attorney General, Bureau Chief, West Palm Beach, and Leslie T. Campbell, Assistant Attorney General, West Palm Beach, FL, for Petitioner.
Alan H. Schreiber, Public Defender, and Diane M. Cuddihy, Chief Assistant Public Defender, Seventeenth Judicial Circuit, Fort Lauderdale, FL, for Respondent.
PARIENTE, J.
We have for review the opinion in Paul v. Jenne, 728 So.2d 1167 (Fla. 4th DCA 1999), which certified conflict with the opinion in Houser v. Manning, 719 So.2d 307 (Fla. 3d DCA 1998), as to whether the trial courts have the inherent authority to deny a subsequent application for bail after a defendant breaches a bond condition, or whether the trial courts' discretion to deny a subsequent application for bail is circumscribed by the parameters established by the Legislature in section 907.041, Florida Statutes (1997). We have jurisdiction. See art. V, § 3(b)(4), Fla. Const. For the reasons explained in this opinion, including our conclusion that section 907.041 expressly addresses the circumstance of a defendant who breaches a *1043 bond condition or commits a new crime, we hold that a trial court's discretion to deny a subsequent application for bail is circumscribed by statute.[1]

FACTS
Jean David Paul was charged with attempted second-degree murder and thereafter released on a $25,000 bond. The only specific condition set forth in the order setting bond was that Paul was not to have direct or indirect contact with the victims of the crime. Approximately six months later, while Paul was still released on bond, he was arrested on new charges.[2] Based on these new charges, the State moved to revoke Paul's bond on the original charge and detain him without bond pending trial. The Fourth District explained:
At the hearing on the state's motion to revoke bond, the arresting officer testified that he observed petitioner and four companions smoking marijuana behind a Pembroke Pines movie theater. The group left the area and entered a vehicle. When officers approached the vehicle, petitioner was seated in the driver's seat. As petitioner stepped from the vehicle, several plastic baggies containing marijuana dropped to the ground. A subsequent search of the vehicle revealed a .38 caliber handgun, with the serial number removed, under the driver's seat and a loaded 9 mm handgun in a bookbag behind the front passenger seat. Petitioner admitted to the arresting officer that the guns belonged to him. He explained that he was previously involved in a shooting incident and that he was carrying guns for protection in case the victim of the shooting decided to retaliate. Additionally, petitioner admitted that he was smoking marijuana just before his arrest.

*1044 Petitioner testified at the bond revocation hearing. He acknowledged telling the police that the firearms belonged to him, but testified that he did so to protect the true owners, his brother and a friend. He also denied telling the police that he purchased the firearms for protection from the victim of an earlier shooting. He said he only told the police that he was on bond for another offense and did not want to be re-arrested. The trial judge commented upon the petitioner's low credibility after noting several contradictions in his testimony at the hearing.
Petitioner's father testified that petitioner is an obedient and respectful son, but acknowledged that petitioner gets "wild" when he is out with certain friends. He requested the court to set new bond conditions and expressed confidence in his ability to supervise petitioner if house arrest were ordered.
Paul, 728 So.2d at 1167-68.
Based on the evidence adduced at the bond revocation hearing, the trial court found that Paul had violated his pretrial release conditions by engaging in criminal activity.[3]See id. at 1168. The trial court then evaluated Paul's application to be re-admitted to bail and the State's contrary position that there was a need for pretrial detention pursuant to section 907.041(4)(b), Florida Statutes (1997). In determining that Paul qualified for pretrial detention, the trial court relied on section 907.041(4)(b)4.b. and remanded Paul into custody.[4]See Paul, 728 So.2d at 1168. In so ruling, the trial court rejected Paul's argument that his prior adjudication for burglary of a dwelling did not qualify as a conviction because it occurred when Paul was a juvenile. See id. at 1169.
Paul thereafter filed an emergency petition for writ of habeas corpus in the Fourth District Court of Appeal, "alleging that the court erred in refusing to set a new bond." Id. at 1167. The Fourth District granted the writ, explaining initially that
both parties concede that only the condition [for pretrial detention] in section 907.041(4)(b)4.b. applies. This subsection allows pretrial detention if the court finds that a person accused of committing a dangerous crime "poses a threat of harm to the community" and has a prior conviction "of a dangerous crime within the 10 years immediately preceding the date of his arrest for the crime presently charged."
Id. at 1168 (footnote omitted). The Fourth District then concluded, as did the First District in Moody v. Campbell, 713 So.2d 1032, 1033 (Fla. 1st DCA 1998), that the Legislature's failure to include juvenile adjudications in section 907.041(4)(b)4.b. precluded the State from using a delinquency adjudication to satisfy its burden of proving a prior conviction for a dangerous crime under that section of the pretrial detention statute. See Paul, 728 So.2d at 1169. Accordingly, the Fourth District held that although a trial court has the power to order the arrest and commitment of a defendant for a violation of a bond condition, the trial court's decision whether to deny a subsequent bond application must be based on the criteria for pretrial *1045 detention set forth in section 907.041(4)(b). See id. at 1169-72. In so holding, the Fourth District certified conflict with Houser v. Manning, 719 So.2d 307, 309 (Fla. 3d DCA 1998), in which the Third District held that once a defendant violates a bond condition, the question as to whether to grant pretrial release is addressed to the discretion of the trial court without regard to the pretrial detention criteria in section 907.041. See Paul, 728 So.2d at 1172.
In analyzing the conflict between these two cases, we consider the broader backdrop of the constitutional right to bail and the presumption of innocence that exists before a defendant is adjudicated guilty of a crime.

LAW AND ANALYSIS
The constitutional right of the accused to be released on bail is set forth in article I, section 14 of the Florida Constitution. Before January 1, 1983, this constitutional provision read as follows:
Until adjudicated guilty, every person charged with a crime or violation of municipal or county ordinance shall be entitled to release on reasonable bail with sufficient surety unless charged with a capital offense or an offense punishable by life imprisonment and the proof of guilt is evident or the presumption is great.
Art. I, § 14, Fla. Const. (amended 1983). Accordingly, under the Florida Constitution in effect before 1983, there were only two types of cases for which Florida courts could deny bail: offenses punishable by death and offenses punishable by life in prison. See State v. Arthur, 390 So.2d 717, 717-18 (Fla.1980). In Arthur, this Court rejected the State's position that denial of bail was mandatory in certain circumstances. Id. at 717. Instead, the Court found that even when a defendant was charged with a capital or life imprisonment offense, the trial court still had the discretion to grant bail. Id. Indeed, as we stated in Arthur, the former section fourteen of our Declaration of Rights embodied the principle that "the presumption of innocence abides in the accused for all purposes while awaiting trial." Id. at 719.
Effective January 1, 1983, the Florida Constitution was amended to broaden the group of persons to whom the courts could deny bail. See art. I, § 14, Fla. Const. As amended, article 1, section 14 now provides:
Unless charged with a capital offense or an offense punishable by life imprisonment and the proof of guilt is evident or the presumption great, every person charged with a crime or violation of municipal or county ordinance shall be entitled to pretrial release on reasonable conditions. If no conditions of release can reasonably protect the community from risk of physical harm to persons, assure the presence of the accused at trial, or assure the integrity of the judicial process, the accused may be detained.

(Emphasis added.) Thus, since the passage of the 1983 amendment, the Florida Constitution has provided two broad categories in which a person charged with a crime could be denied the right to be released on bond: (1) where the person is accused of a capital crime or an offense punishable by life imprisonment where the proof of guilt is evident and the presumption great; or (2) where no condition of release can reasonably protect the community, assure the presence of the accused or assure the integrity of the judicial process. See art. 1, § 14.[5]
*1046 In order to implement the 1983 amendment to article I, section 14, the Legislature enacted section 907.041, which provides a comprehensive statutory scheme setting forth the circumstances when a trial court may deny bond to a person charged with a crime. See Gomez v. Hinckley, 473 So.2d 809, 810-11 (Fla. 4th DCA 1985). Thus, the Legislature established detailed and specific criteria for determining when a person may be detained prior to trial by providing:
(b) The court may order pretrial detention if it finds a substantial probability, based on a defendant's past and present patterns of behavior, the criteria listed in s. 903.046,[6] and any other relevant facts, that:
1. The defendant has previously violated conditions of release and that no further conditions of release are reasonably likely to assure the defendant's appearance at subsequent proceedings;
2. The defendant, with the intent to obstruct the judicial process, has threatened, intimidated, or injured any victim, potential witness, juror, or judicial officer, or has attempted or conspired to do so, and that no condition of release will reasonably prevent the obstruction of the judicial process;
3. The defendant is charged with trafficking in controlled substances as *1047 defined by s. 893.135, that there is a substantial probability that the defendant has committed the offense, and that no conditions of release will reasonably assure the defendant's appearance at subsequent criminal proceedings; or
4. The defendant poses the threat of harm to the community. The court may so conclude if it finds that the defendant is presently charged with a dangerous crime, that there is a substantial probability that the defendant committed such crime, that the factual circumstances of the crime indicate a disregard for the safety of the community, and that there are no conditions of release reasonably sufficient to protect the community from the risk of physical harm to persons. In addition, the court must find that at least one of the following conditions is present:
a. The defendant has previously been convicted of a crime punishable by death or life imprisonment.
b. The defendant has been convicted of a dangerous crime within the 10 years immediately preceding the date of his or her arrest for the crime presently charged.
c. The defendant is on probation, parole, or other release pending completion of sentence or on pretrial release for a dangerous crime at the time of the current arrest.
§ 907.041(4)(b).[7]
Not only has the Legislature provided comprehensive guidelines for when an original application for bail may be denied, but in so doing, it has also addressed the question of when a defendant violates the conditions of bond, which is the precise issue now before us. Section 907.041(4)(b)1. specifically applies to a defendant who has "previously violated conditions of release." It provides that the trial court may grant pretrial detention if "no further conditions of release are reasonably likely to assure the defendant's appearance at subsequent proceedings." § 907.041(4)(b)1. In Houser, the Third District acknowledged that this provision could "theoretically" be invoked by the State "in order to oppose further bond where the defendant had previously been released and then rearrested for breach of a bond condition." 719 So.2d at 311. Nonetheless, the Third District asserted that the "clearest use of this subdivision would be where bond is opposed on the current offense because the defendant became a fugitive while released on bond for a previous offense." Id. The plain language of section 907.041(4)(b)1, however, does not so limit the trial court, and thus, that provision is clearly applicable to allow a trial court to consider ordering pretrial detention where the defendant has subsequently violated conditions of release.[8]
*1048 Further, section 907.041(4)(b)4.c is an additional provision in which the Legislature addressed the circumstance in which a defendant violates a bond condition and specifically where the violation of the bond condition is a new crime. Thus, the Legislature also has provided for pretrial detention where the defendant is "presently charged with a dangerous crime" and the defendant "is on probation, parole, or other release pending completion of sentence or on pretrial release for a dangerous crime at the time of the current arrest." § 907.041(4)(b)4.c, Fla. Stat. Although the State now argues that Paul would qualify for detention pursuant to section 907.041(4)(b)4.c, it did not argue the applicability of that provision to the trial court, and therefore, that issue is not now before us. Nonetheless, we note that section might have applied if the State had attempted to seek pretrial detention for the newly charged offenses for carrying concealed weapons and possession of marijuana and drug paraphernalia. And that section certainly would apply to a defendant who committed a new dangerous crime while out on pretrial release for a dangerous crime.
Moreover, in section 907.041(4)(b)4, the Legislature generally addressed the circumstance of when pretrial detention should be ordered if the person poses a threat of harm to the community. However, the Legislature added an additional requirement that the trial court also find an additional condition as set forth in subsections a, b or c. This is the provision that the trial court relied upon in ordering pretrial detention; the Fourth District found, however, that Paul lacked a qualifying offense because his prior disposition was a juvenile adjudication, see Paul, 728 So.2d at 1169, and the State has not appealed that aspect of the Fourth District's holding in this Court.
In addition to establishing comprehensive criteria to determine if pretrial release is warranted, the Legislature also has enacted a comprehensive set of procedures for pretrial detention, which provide a panoply of protections. See § 907.041(4). For example, section 907.041(4)(c)-(d) provides that when a person is arrested and charged with a crime for which pretrial detention could be ordered, the arresting officer must promptly notify the state attorney, who may then file a motion for pretrial detention. Pending action by the state attorney, the defendant may only be held without bail for up to twenty-four hours. See § 907.041(4)(d). If the State files a pretrial detention motion, the court may order such detention only after a hearing, which must be held within five days of the filing of the State's motion. See § 907.041(4)(e). The State is entitled to one continuance for good cause, and no continuance may exceed five days unless extenuating circumstances are presented. See id. The defendant is entitled to be represented by counsel, to present witnesses and evidence, and to cross-examine witnesses. See § 907.041(4)(g). In addition, the state attorney has the burden of showing the need for pretrial detention. See § 907.041(4)(f).
Likewise, this Court has adopted rules of criminal procedure that are consistent with and complementary to this legislative scheme. See Fla. R.Crim. P. 3.131-3.132.[9] For example, rule 3.131(c) specifically addresses the situation where the defendant *1049 willfully fails to appear, which would be a breach of a bond condition, by providing that a defendant thereafter "shall not be eligible for a recognizance bond."[10] However, there is no suggestion in either the 1997 statute or the procedural rule that a failure to appear alone results in the forfeiture of the right to be considered for readmission to bail.[11]
Further, as the Fourth District points out in Paul, rule 3.132(b), "which provides that a motion for pretrial detention may be filed at any time prior to trial, contemplates successive bail applications." 728 So.2d at 1171. "The rule strongly suggests that it applies not just to release determinations upon initial arrest, but also to bond decisions following rearrests and renewed bail applications." Id.
In Houser, the Third District concluded that the amendment to article I, section 14, along with the enactment of section 907.041, expanded the court's authority to deny bond in certain situations. 719 So.2d at 310-11. According to the Third District, these changes were not intended to "cut back on the court's power to enforce bond conditions and revoke bond where bond conditions have been breached." Id. Thus, the Third District in Houser reasoned that the trial court's inherent authority to revoke bond and deny subsequent bond applications existed both before and after the constitutional amendment effective January 1, 1983. Id. The Third District found that in cases of violations of bond conditions, the provisions of section 907.041 are merely "complementary to, and [do not] replace, a trial court's already-existing power to ... deny further bail where a bond condition has been breached." Id. at 311.
In making this determination, the Houser court relied upon Gardner v. Murphy, 402 So.2d 525, 526 (Fla. 5th DCA 1981),[12] which explains:
... The constitution ... grants reasonable, not unbridled, release. Should a defendant violate a reasonable condition to bail, bail can be revoked. Having been provided reasonable bail only to violate a condition thereof, a defendant cannot claim he has been deprived of his constitutional right to bail should the trial court reasonably deny subsequent applications for bail.
Houser, 719 So.2d at 308 (quoting Murphy, 402 So.2d at 526) (emphasis supplied). Thus, the Houser court determined that *1050 when a condition of bond is violated, the trial court has the discretion to deny bond and the trial court's ruling is reviewable for an abuse of discretion. 719 So.2d at 309. Before Houser, however, no other opinion of any other appellate court, aside from the dicta in Gardner, concluded that trial courts are vested with inherent authority, without regard to article I, section 14 or section 907.041, to deny bail once there has been a breach of the bond conditions.
In contrast to the Third District's holding, several Fourth District cases have held that the trial court's decision to deny bond is circumscribed by the pretrial detention statute. See Lepore v. Jenne, 708 So.2d 980 (Fla. 4th DCA 1998); Blackman v. State, 707 So.2d 820 (Fla. 4th DCA 1998); Surdovel v. Jenne, 706 So.2d 115 (Fla. 4th DCA 1998); Dupree v. Cochran, 698 So.2d 945 (Fla. 4th DCA 1997); Metzger v. Cochran, 694 So.2d 842 (Fla. 4th DCA 1997); Merdian v. Cochran, 654 So.2d 573 (Fla. 4th DCA 1995). In Paul, Judge Taylor explained the reasoning behind the contrary view:[13]
Although we agree with Houser that a trial court has the authority to revoke a defendant's bond under pretrial release rules allowing arrest and recommitment for bond violations, and pursuant to the court's inherent power to enforce its own orders, we disagree that a trial court has the absolute discretion to deny bond unless a defendant meets the criteria for detention without bond under the pretrial detention statutes. By breaching a condition of the bond originally set by the court, a defendant forfeits the right to continued release under the terms of that bond. However, the defendant does not forfeit his or her constitutionally guaranteed right to bail altogether, a refusal to readmit a defendant to any bail at all must be subject to the limitations of the pretrial detention statute.

728 So.2d at 1171 (emphasis supplied); see Schwartz v. Neumann, 731 So.2d 746, 747 (Fla. 4th DCA 1999) (pretrial detention is inappropriate after defendant breaches conditions of release, unless the State proves at least one of the four circumstances listed in section 907.041(4)(b)); Rix v. Jenne, 728 So.2d 827 (Fla. 4th DCA 1999) (granting writ of habeas corpus where State did not satisfy its burden of proving requirements for pretrial detention *1051 upon breach of bond), review granted, 744 So.2d 452 (1999).
We agree with the reasoning of Paul. The Florida Constitution guarantees the right to bail with limited exceptions, and in accordance with this guaranty, the Legislature has created a comprehensive and carefully crafted scheme for setting forth the circumstances under which a defendant may be held in pretrial detention.[14] Accordingly, although the breach of a bond condition provides the basis for revocation of the original bond, the trial court's discretion to deny a subsequent application for a new bond is limited by the terms of the statute. Further, there is nothing that prevents the State from seeking pretrial detention for the newly charged offense if the State can establish the necessary criteria pursuant to section 907.041(4)(b).
As the Fourth District explained:
[T]he court's authority to deny bond pending trial is circumscribed by the provisions of Florida Statute section 907.041. The legislature has specifically delineated and narrowly limited those circumstances under which bond may be denied. We have no difficulty divining the legislative intent to curtail the court's power to deny bail, except in certain instances, in light of the constitutionally guaranteed right to bail. To effectuate its express policy of assuring the detention of "those persons posing a threat to the safety of the community or the integrity of the judicial process," the legislature enacted a pretrial detention statute, which sets forth a comprehensive list of conditions that will qualify a defendant for detention without bail. By providing clear and reasonable guidelines for courts to follow in considering denial of this basic and fundamental right, the legislature may very well have been motivated by a desire to achieve uniformity and fairness in judicial determinations of bail entitlement, as well as to provide trial courts with a means of identifying persons whose criminal histories and patterns of behavior signal a danger to society.
Paul, 728 So.2d at 1171-72 (footnote omitted).
Our decision today to adopt the Fourth District's reasoning in Paul is influenced by our concern that adopting the Third District's view would leave the judiciary, the State, and defendants without ascertainable criteria, precise standards, and procedural protections presently existing in the comprehensive statutory scheme and rules, and thus potentially run afoul of a defendant's constitutional rights. For example, the Third District opines that "[i]n the case of a minor bond violation, particularly of a noncriminal nature, the court may want to reinstate bond." Houser, 719 So.2d at 309. Yet, if the decision to grant pretrial release is addressed only to the "sound discretion of the trial court," appellate review would consist only of a broad abuse of discretion standard.
*1052 Although we hold that neither the existing rules nor the 1997 statutes vest the trial court with the inherent authority to deny a subsequent application for bond based solely on a defendant's violation of a bond condition, we emphasize that the trial court was not without recourse to address a defendant's willful violation of bond conditions. For example, upon a violation of bond, the trial court had authority pursuant to Florida Rule of Criminal Procedure 3.131(g) to direct the arrest and commitment of a defendant. If recommitment is ordered, nothing in either the 1997 statute or the rules prevented the court from setting harsher conditions of pretrial release for defendants who seek readmission to bail. Similarly, the court could increase the amount of the bond or prevent further release of the defendant on pretrial recognizance pursuant to rule 3.131(c)(1)-(2). Further, a defendant previously released on bail could become subject to pretrial detention if the trial court found that the defendant qualifies for pretrial detention based upon the statutory criteria. In addition, the State could have attempted to establish that the defendant meets the criteria for pretrial detention for the newly charged offense. Finally, if the concern was that a defendant's conduct evinced disregard of the court's authority, a defendant's conduct for violation of the court's order could be addressed as an indirect or direct criminal contempt of court as long as the protections afforded a defendant for criminal contempt are followed. See Fla. R.Crim. P. 3.830-3.840; see also International Union v. Bagwell, 512 U.S. 821, 826, 114 S.Ct. 2552, 129 L.Ed.2d 642 (1994); Gregory v. Rice, 727 So.2d 251, 253-54 (Fla.1999) (citing Bowen v. Bowen, 471 So.2d 1274, 1277-79 (Fla.1985)).

CONCLUSION
The Legislature by statute has constructed a comprehensive and specific framework setting forth the multiple circumstances under which trial courts may act to deny bail and order pretrial detention. This scheme as set forth in section 907.041, Florida Statutes (1997), fully comports with the Florida Constitution and has long been the standard by which trial courts have been guided in determining whether to deny bail. The statute and the rules enacted pursuant to the statute incorporate the considerations required to balance the court's need to enforce its orders, the need for society to be protected from those posing a danger to the community, and the defendant's constitutional rights to bail based on the time-honored presumption of innocence.[15]
Although we understand the viewpoints espoused by the Third District, we find that the reasoning of the Fourth District majority opinion in Paul to represent the better approach for the reasons explained in this opinion. Accordingly, we approve Paul and disapprove of the Third District's contrary holding in Houser, as well as the Fifth District's opinion in Gardner, to the extent those opinions are inconsistent with this opinion.
It is so ordered.
SHAW, ANSTEAD and LEWIS, JJ., concur.
*1053 WELLS, C.J., dissents with an opinion, in which HARDING and QUINCE, JJ., concur.
WELLS, C.J., dissenting.
I dissent because I conclude that the decision of the Third District in Houser v. Manning, 719 So.2d 307 (Fla. 3d DCA 1998), and the reasoning in Gardner v. Murphy, 402 So.2d 525, 526 (Fla. 5th DCA 1981), simply make sense. Further, I do not agree with the majority that the reasoning of the Fourth District's majority should be approved in this case. A judge who has set a condition of bail clearly must have the discretion to deny further bail to persons who break the condition. As stated in Judge Cope's opinion in Houser, "the very idea of a defendant's release being conditioned is meaningless without the power to rescind the release when the conditions are violated." Houser, 719 So.2d at 308 (quoting Standards for Criminal Justice § 10-5.7 cmt. at 10-93 (2d ed.1986)).
I cannot agree that the Legislature ever intended to limit the necessary authority of the trial court to enforce the conditions the trial court has set. The Legislature subsequently amended the statute which is referenced in the majority's footnote 1, and the amendment should be accepted as a clarification of legislative intent. See Ivey v. Chicago Ins. Co., 410 So.2d 494 (Fla.1982). In Barns v. State, 768 So.2d 529, 532 (Fla. 4th DCA 2000), to which the majority refers in its footnotes 1, 7, and 8, the district court stated in its footnote 2:
The staff analysis of the bill references the conflict between Paul v. Jenne, 728 So.2d 1167 (Fla. 4th DCA), rev. granted, 741 So.2d 1137 (Fla.1999), and Houser v. Manning, 719 So.2d 307 (Fla. 3d DCA 1998), suggesting that a primary motivation behind the statute was to legislatively overrule the result in Paul. See House of Representatives as Revised by the Committee on Criminal Justice Appropriations Analysis, CS/HB 607, p. 5.
HARDING and QUINCE, JJ., concur.
NOTES
[1] After we accepted jurisdiction and heard oral argument in this case, the Legislature enacted new laws that amended the statutes related to pretrial release. See ch. 2000-178, Laws of Fla. (effective June 2, 2000); ch. 2000-229, Laws of Fla. (effective June 6, 2000); see generally Barns v. State, 768 So.2d 529 (Fla. 4th DCA 2000). Among other things, the new laws authorize trial courts to order pretrial detention for persons on pretrial release who commit a new crime under certain circumstances where there is "probable cause to believe the defendant committed a new crime." § 903.0471, Fla. Stat. (2000).

Based on the enactment of this new law, this Court asked the parties to respond to whether the recent amendment affects the issues presented in this case or whether it moots the appeal. Both parties agree that the enactment does not moot the controversy in this particular case. We agree. However, because there is no expressed Legislative intent that these amendments are to apply retroactively and because these amendments would affect existing rights, we find that these amendments do not apply to this case. See State v. Lavazzoli, 434 So.2d 321, 323 (Fla. 1983). Moreover, although the 2000 amendments expand the circumstances under which a court may order pretrial detention, the amendments do not address the broader issue that is before us as to whether a court possesses inherent authority to deny bail where a bond condition has been breached. Because we do not find these statutory amendments applicable to this case, we do not address the constitutionality of these newly added provisions.
[2] Paul was arrested for carrying two concealed firearms, possession of a firearm with an altered serial number, possession of cannabis, and possession of drug paraphernalia. However, during the pendency of the habeas corpus proceeding in the Fourth District, the State filed a "No Information" for all of the criminal charges except for the possession of drug paraphernalia charge for which it filed an information for misdemeanor possession of marijuana. Notably, although the State attempted to seek revocation of bond on the basis of this subsequent charge that it contended caused Paul to be a danger to the community, the State did not pursue the firearm charges that also served as part of the basis for the trial court's finding that Paul was a danger to the community.
[3] Section 903.047, Florida Statutes (1997), sets forth the statutory conditions of pretrial release, one of which is that "[t]he defendant refrain from criminal activity of any kind."
[4] Specifically, the trial court found that Paul was presently charged with a dangerous crime; there was a substantial probability that he committed the crime; there were no conditions of release reasonably sufficient to protect the community from the risk of harm; and Paul had been convicted of a prior dangerous crime, that is, burglary of a dwelling, within ten years of his arrest.
[5] This right to bail provided by the Florida Constitution is more explicit than that established by the Eighth Amendment of the United States Constitution, which provides that "Excessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted." U.S. Const. amend. VIII.
[6] Section 903.046(2), Florida Statutes (1997), sets forth the following criteria for the trial court to consider when determining whether to release a defendant on bail or other conditions:

(a) The nature and circumstances of the offense charged.
(b) The weight of the evidence against the defendant.
(c) The defendant's family ties, length of residence in the community, employment history, financial resources, and mental condition.
(d) The defendant's past and present conduct, including any record of convictions, previous flight to avoid prosecution, or failure to appear at court proceedings. However, any defendant who previously had willfully and knowingly failed to appear and breached a bond as specified in s. 903.26, but who had voluntarily appeared or surrendered, shall not be eligible for a recognizance bond; and any defendant who willfully and knowingly failed to appear and breached a bond as specified in s. 903.26 and who was arrested at any time following forfeiture shall not be eligible for a recognizance bond or for any form of bond which does not require a monetary undertaking or commitment equal to or greater than $2,000 or twice the value of the monetary commitment or undertaking of the original bond, whichever is greater.
(e) The nature and probability of danger which the defendant's release poses to the community.
(f) The source of funds used to post bail.
(g) Whether the defendant is already on release pending resolution of another criminal proceeding or on probation, parole, or other release pending completion of a sentence.
(h) The street value of any drug or controlled substance connected to or involved in the criminal charge. It is the finding and intent of the Legislature that crimes involving drugs and other controlled substances are of serious social concern, that the flight of defendants to avoid prosecution is of similar serious social concern, and that frequently such defendants are able to post monetary bail using the proceeds of their unlawful enterprises to defeat the social utility of pretrial bail. Therefore, the courts should carefully consider the utility and necessity of substantial bail in relation to the street value of the drugs or controlled substances involved.
(i) The nature and probability of intimidation and danger to victims.
(j) Any other facts that the court considers relevant.
Chapter 2000-178 added subsection (j), which provides, "Whether there is probable cause to believe that the defendant committed a new crime while on pretrial release." Former subsection (j) was designated as subsection (k). See ch. 00-278, § 1, Laws of Fla.
[7] Significantly for future cases, in the 2000 amendments the Legislature added subsection 907.041(4)(c)7, which provides for pretrial detention if

7. The defendant has violated one or more conditions of pretrial release or bond for the offense currently before the court and the violation, in the discretion of the court, supports a finding that no conditions of release can reasonably protect the community from risk of physical harm to persons or assure the presence of the accused at trial.
Ch. 2000-229, § 2, Laws of Fla. The Legislature also created section 903.0471, which provides:
903.0471 Violation of condition of pretrial release.
Notwithstanding s. 907.041, a court may, on its own motion, revoke pretrial release and order pretrial detention if the court finds probable cause to believe that the defendant committed a new crime while on pretrial release.
Ch. 2000-178, § 3, at 1469, Laws of Fla.
[8] However, in this case the trial court did not make findings as to whether "further conditions of release are reasonably likely to assure his appearance at subsequent proceedings" so as to invoke section 907.041(b)(1).
[9] Florida Rule of Criminal Procedure 3.131 describes, among other things, the right to pretrial release, the procedures used at the court's hearing to determine pretrial release, the conditions of release, and the conditions for bail after recommitment. See Fla. R.Crim. P. 3.131. Florida Rule of Criminal Procedure 3.132 describes the procedures regarding pretrial detention. See Fla. R.Crim. P. 3.132.
[10] Florida Rule of Criminal Procedure 3.131(c) provides:

(c) Consequences of Failure to Appear.
(1) Any defendant who willfully and knowingly fails to appear and breaches a bond as specified in section 903.26, Florida Statutes, and who voluntarily appears or surrenders shall not be eligible for a recognizance bond.
(2) Any defendant who willfully and knowingly fails to appear and breaches a bond as specified in section 903.26, Florida Statutes, and who is arrested at any time following forfeiture shall not be eligible for a recognizance bond or any form of bond that does not require a monetary undertaking or commitment equal to or greater than $2,000 or twice the value of the monetary commitment or undertaking of the original bond, whichever is greater.
[11] See also Bradshaw v. Jenne, 754 So.2d 109, 111-112 (Fla. 4th DCA 2000) (Taylor, J., dissenting) (explaining that writ of habeas corpus should be granted because denying release on bond based on willful failure to appear without express findings of whether any conditions of pretrial release are reasonably likely to assure appearance fails to comply with the statute governing pretrial detention set forth in section 907.041).
[12] Because Gardner v. Murphy, 402 So.2d 525 (Fla. 5th DCA 1981), involved a case of pretrial bail that was denied to a defendant after his initial arrest, the statements in that case concerning denial of bail upon rearrest for a breach of bond conditions constitute dicta.
[13] Since the time that the Fourth District decided Paul, it appears that there has been disagreement within the Fourth District as to whether a denial of bond after a trial court has revoked bond must be based on a showing of need for pretrial detention, pursuant to the criteria set forth in 907.041. Judge Gross had taken the position that Paul misconstrued section 907.041 by applying it to a subsequent application for bail after bond revocation, thus improperly limiting the inherent power of the court. See Thomas v. Jenne, 766 So.2d 320, 321 (Fla. 4th DCA 2000) (Gross, J., concurring in part and dissenting in part). However, subsequent to Thomas and the 2000 legislative amendments, Judge Gross concluded that, in light of the 2000 amendments, the "legal approach of Paul was correctthat the pretrial detention statute applied to the revocation of an existing bond." Barns, 768 So.2d at 531. In addition, although the Fourth District had voted to consider en banc whether to recede from Paul, a subsequent determination was made that en banc consideration was unnecessary in light of the 2000 legislative amendments. See id. at 530-31. Most recently, in Parker v. State, 780 So.2d 210 (Fla. 4th DCA 2001), the Fourth District upheld the constitutionality of section 903.0471 and concluded that the Legislature had not intended that section 907.041 be followed after a defendant committed a new crime while on pretrial release. Although newly-enacted section 903.0471 is a free-standing provision authorizing pretrial detention if the court finds probable cause to believe that the defendant committed a new crime while on pretrial release, as stated in footnote 1, the constitutionality of that provision is not before us in this case.
[14] We note that although the 2000 amendments to the pretrial release statutes do not apply in this case, and although their interpretation, application, and constitutionality are not before us, these amendments continue to evince a comprehensive legislative scheme regarding bond and pretrial release, even to the extent that the amendments repeal Florida Rules of Criminal Procedure 3.131 and 3.132 "to the extent that the rules are inconsistent with this act." Ch.2000-178, § 5 at 1470, Laws of Fla. Additionally, by enacting section 903.0471 and section 907.045(4)(b)7, the Legislature used the term "pretrial detention" in a way that signifies that the term applies to a revocation of an existing bond. Accordingly, the Legislature's enactment of the 2000 amendments supports our holding in this case that section 907.041 applies to revocation of an existing bond. As Judge Gross noted, "[t]he amendments expanded the power of the trial courts to revoke existing bonds and order pretrial detention." Barns, 768 So.2d at 531.
[15] We note that the Third District cited to the American Bar Association Standards for Criminal Justice in support of its opinion that the trial court possesses inherent authority to deny bail once the bond conditions have been breached. See Houser, 719 So.2d at 308, 310. The ABA Standards, however, set forth a comprehensive set of guidelines and procedures and do not advocate the view that the decision to grant subsequent admission to bond should be founded solely on the trial court's discretion based on its inherent authority. See generally Standards for Criminal Justice: Pretrial Release Standards (Rev.2d ed.1989).