SCHWARTZ, Senior Judge.
Santiago seeks habeas corpus relief from an order revoking his pretrial release and detaining him without bond entered pursuant to section 903.0471, Florida Statutes (2000):
Notwithstanding s. 907.041, a court may, on its own motion, revoke pretrial release and order pretrial detention if the court finds probable cause to believe that the defendant committed a new crime while on pretrial release.
(Emphasis added). The legal issue presented by the undisputed facts is whether the statute applies when the defendant commits new felonies from jail during the period between the setting of bond for previous offenses and his release. The defendant argues that the provision is inapplicable because he was not literally “on pretrial release” at the time. The trial court disagreed and so do we.
On December 25, 2012, Santiago was arrested and charged with, inter alia, aggravated stalking of his ex-wife. While being processed at the station, he was served with a temporary domestic violence injunction precluding him from unwel-comed contact with her. The next day, he was brought to a first appearance hearing on the aggravated stalking and accompanying charges at which the court set bond and entered a stay away order that also prohibited contact with the victim. See § 903.047, Fla. Stat. (2006) (“(1) As a condition of pretrial release, whether such release is by surety bail bond or recognizance bond or in some other form, the defendant shall ... (b) Refrain from any contact of any type with the victim, except through pretrial discovery pursuant to the Florida Rules of Criminal Procedure.”).
While still in jail that day, however, Santiago made threatening phone calls to his ex-wife. Later the same day, he was arrested on a new case based on those calls, charging him with aggravated stalking, witness tampering, and violation of a temporary restraining order. On the following day, Santiago went to a first appearance hearing on the new charges. The judge set a separate bond for aggravated stalking and witness tampering charges, and released him on his own recognizance on the remaining offenses. Thereafter, Santiago posted bonds simulta *850 neously on both his first and second cases, and was released.
On January 24, 2013, Santiago appeared before the trial court for his arraignment on the first case. The trial court sua sponte revoked Santiago’s bond on that first case and, in the ruling ordered he be held without bond, based upon a determination of probable cause that he violated the conditions of his pretrial release by committing new crimes.
As we have indicated, Santiago’s position is entirely based on his claim that the alleged new crime was not committed “while on pretrial release,” and thus, that section 908.0471 does not apply. Analogizing this case to Martin v. State, 243 So.2d 189 (Fla. 4th DCA 1971); Williamson v. State, 388 So.2d 1345 (Fla. 3d DCA 1980); Stafford v. State, 455 So.2d 385 (Fla.1984); Russell v. State, 487 So.2d 366 (Fla. 2d DCA 1986) and Hart v. State, 364 So.2d 544 (Fla. 4th DCA 1978), we reject that claim and hold that the provision does apply when the defendant commits a new crime — here, by way of making threatening phone calls from jail — after the bond on his first case has been set but before he is released on the bond.
In Martin, the defendant was sentenced to jail time followed by a term of probation that would commence upon his release from jail. While Martin was serving his jail sentence he committed additional crimes resulting in further criminal charges being filed against him. The trial court revoked Martin’s probation and sentenced him to prison. He claimed error on appeal on the ground that his probation could not be revoked because it had not yet begun. The Fourth District affirmed and stated “the court’s action in revoking probation and imposing sentence on appellant was not error.” Id. at 190. While acknowledging that “technically, appellant could not have violated the terms of a probation order which had not yet taken effect at the time of the alleged violations,” the court held that it could “revoke an order of probation, the term of which has not yet commenced, should the court determine that the defendant probationer has been guilty of misconduct occurring subsequent to the entry of the order of probation.” Id. at 190-91.
Likewise, in Williamson, 388 So.2d 1345, the appellant’s main contention was that his probation, which was to follow the conclusion of his one-year jail sentence, was improperly revoked because his failure to surrender for the service of his jail term was not technically in violation of any of the stated conditions of the order of probation. This Court agreed with the factual premises of the appellant’s argument but not with his conclusion, finding that it could lead to paradoxical results:
Since Williamson’s probationary term, which was to follow his year in jail, had not yet begun, he could not have been in violation of any of its express terms prior to that time — even if he had committed a first degree murder while at liberty.
Id. at 1347. Affirming the revocation of probation and resentencing, this Court found the following language of Martin to be controlling:
“The question here is whether a defendant probationer can, with impunity, engage in a criminal course of conduct (or for that matter any course of conduct which is essentially contrary to good behavior) during the interval between the date of an order of probation and some subsequent date when the probationary term is to commence. We think not. To hold otherwise would make a mockery of the very philosophy underlying the concept of probation, namely, that given a second chance to live within the rules of society and the law of the *851 land, one will prove that he will thereafter do so and become a useful member of society.
Again to draw upon the language of the Martin opinion, it would be a mockery to permit Williamson to claim his continued entitlement to future probation after he deliberately and knowingly violated the trust reposed in him upon the granting of his own request for a reciprocal benefit.
We will not approve such a result.”
Williamson, 388 So.2d at 1347-48 (quoting Martin, 243 So.2d at 190-91).
Similarly, in the case at bar, we think that the claim that a defendant is free to commit new crimes without endangering a previous order of pretrial release merely because he had not yet complied with the conditions requires an unsupportable anomaly in the statute, which, as in Williamson, we will not approve. See State v. Hackley, 95 So.3d 92, 95 (Fla.2012); State v. Burris, 875 So.2d 408, 414 (Fla.2004); Maddox v. State, 923 So.2d 442, 448 (Fla.2006).
In essence, the issue is one of statutory interpretation which, of course, is based entirely upon a correct reading of legislative intent. The very purpose of enacting section 903.0471 was to reinstate the common and well justified practice of, in effect, granting a defendant only one shot at pretrial release and, as it were, automatically revoking it when he has violated its most basic term by committing another offense thereafter. By doing so, the legislature overruled Paul v. Jenne, 728 So.2d 1167 (Fla. 4th DCA 1999), rev. granted, 741 So.2d 1137 (Fla.1999), which held that this could not lawfully be done. See also Parker v. State, 780 So.2d 210 (Fla. 4th DCA 2001), rev. granted, 800 So.2d 615 (Fla.2001). It is inconceivable, that the legislature would contemplate that the policy of “two strikes and you’re in” would not take effect merely because the defendant did not even have the goodness to be released from jail before he violated his first bond. See State v. Martinez, 103 So.3d 1013 (Fla. 3d DCA 2012).
Habeas corpus denied.