898 So.2d 1 (2004)
Maggie KNOWLES, etc., Petitioner,
v.
BEVERLY ENTERPRISES-FLORIDA, INC., etc., Respondent.
No. SC00-1910.
Supreme Court of Florida.
December 16, 2004.
Rehearing Denied March 17, 2005.
*2 Jane Kreusler-Walsh and Rebecca J. Mercier of Jane Kreusler-Walsh, P.A., West Palm Beach, FL, and Jeffrey M. Fenster of Fenster and Faerber, P.A., Plantation, FL, for Petitioner.
Scott Mager and Gary Gaffney of Mager and Associates, P.A., Fort Lauderdale, FL, George Quintairos and Edward Prieto of Quintairos, Prieto, Wood and Boyer, P.A., Miami, FL, for Respondent.
Joel S. Perwin of Podhurst, Orseck, Josefsberg, Eaton, Meahow, Olin and Perwin, P.A., Miami, FL, and Ford and Sinclair, P.A., Miami, FL, for amicus curiae, the Academy of Florida Trial Lawyers.
Edward J. Lyons of Milcowitz and Lyons, P.A., Clearwater, FL, for amicus curiae, the Coalition to Protect America's Elders.
M. Stephen Turner, David K. Miller and Kelly A. O'Keefe of Broad and Cassel, Tallahassee, FL, for amici curiae, Florida Health Care Association and the Florida Association of Homes for the Aging
G. Bart Billbrough, Geoffrey B. Marks and Daniella S. Kreiner of Cole, White and Billbrough, P.A., Miami, FL, for amicus curiae, the Health Care and Retirement Corporation of America, a foreign corporation d/b/a Heartland Health Care and Rehabilitation Center  Sunrise.
PER CURIAM.
We have for review Beverly Enterprises  Florida, Inc. v. Knowles, 766 So.2d 335 (Fla. 4th DCA 2000) (en banc). The district court certified the following question as one of great public importance:
MAY A PERSONAL REPRESENTATIVE BRING A STATUTORY CAUSE OF ACTION UNDER SECTION 400.023(1), FLORIDA STATUTES (1997), ON BEHALF OF A DECEASED RESIDENT OF A NURSING HOME FOR ALLEGED INFRINGEMENT OF THE RESIDENT'S STATUTORY RIGHTS PROVIDED BY SECTION 400.022, FLORIDA STATUTES (1997), WHERE THE INFRINGEMENT HAS NOT CAUSED THE RESIDENT'S DEATH?
Beverly Enterprises  Florida, Inc. v. Knowles, 763 So.2d 1285, 1285 (Fla. 4th DCA 2000). We have jurisdiction. See art. V, § 3(b)(4), Fla. Const. For the reasons set forth in this opinion, we answer the question in the negative and approve the decision of the Fourth District Court of Appeal.

STATEMENT OF THE CASE & FACTS
The personal representative of the estate of Gladstone Knowles, deceased, filed an action against Beverly Enterprises seeking damages under the provisions of section 400.023(1), Florida Statutes (1997), which provides:
Any resident whose rights as specified in this part are deprived or infringed upon shall have a cause of action against any licensee responsible for the violation. *3 The action may be brought by the resident or his or her guardian, by a person or organization acting on behalf of a resident with the consent of the resident or his or her guardian, or by the personal representative of the estate of the deceased resident when the cause of death resulted from the deprivation or infringement of the decedent's rights.

(Emphasis supplied.) The facts that gave rise to the personal representative's action are set out in the Fourth District's opinion:
Gladstone Knowles, an elderly gentleman, was a resident of Washington Manor Nursing Home and Rehabilitation Center for approximately 67 days while he convalesced from hip-replacement surgery. While at Washington Manor, Knowles developed severe bedsores and other serious ailments allegedly because of neglectful and improper treatment and care provided by Washington Manor. Knowles was transferred to a medical hospital where he later died. Maggie Knowles, the personal representative for Gladstone Knowles, sued Washington Manor for violation of the Patient's Bill of Rights under sections 400.022 and 400.023, Florida Statutes (1997). Washington Manor moved for summary judgment because the complaint did not allege that any violation of the statute caused Gladstone's death. Appellee conceded that Gladstone's death did not result from any of the alleged violations of the Patient's Bill of Rights. Interpreting section 400.023(1) to preclude actions by a personal representative when the patient's death is not caused by a deprivation of rights under the statute, the trial court granted appellant's motion for summary judgment. After the trial court disposed of the statutory negligence claims, the case went to trial on a common law negligence theory. The jury returned a verdict for Washington Manor.
Beverly Enterprises  Florida, Inc. v. Knowles, 766 So.2d 335, 335-36 (Fla. 4th DCA 2000) (en banc). However, after the return of the jury verdict, the trial court concluded that it had erred in granting a summary judgment on the statutory claim and ordered a new trial. The new trial order relied upon a newly rendered decision from the Fourth District.
Prior to its en banc decision in Knowles, the Fourth District had held in Greenfield v. Manor Care, Inc., 705 So.2d 926, 933-34 (Fla. 4th DCA 1997), that section 400.023(1) permitted a personal representative to bring a cause of action for damages arising out of violations of section 400.022 regardless of whether the violations caused the death of the resident. See Knowles, 766 So.2d at 336. When the Fourth District's decision in Greenfield was called to its attention, the trial court granted petitioner's motion for a new trial.
Upon subsequent review, however, the Fourth District receded from its earlier decision in Greenfield and reversed the trial court's order for a new trial. The district court, sitting en banc, held that "the language of section 400.023 unambiguously provides that a personal representative of a deceased, nursing home resident may bring a cause of action against the nursing home for violation of the Patient's Bill of Rights only when the deprivation or infringement of the resident's rights caused the patient's death." Knowles, 766 So.2d at 336. Accordingly, the Fourth District held that the trial court was correct in initially dismissing the statutory negligence claims. See id.
In Greenfield, the personal representative of the estate of a deceased resident who died from causes unrelated to the alleged statutory violations filed suit against the nursing home for its failure to *4 adequately advise residents of the costs of services. See Greenfield, 705 So.2d at 933. The trial court dismissed the action because the personal representative had failed to demonstrate that the decedent died as a result of the statutory violations. Id. On appeal, the Fourth District reversed. It reasoned:
The trial court dismissed count VII on the basis that appellant did not allege that her husband's death resulted from the deprivation or infringement of his rights under Chapter 400. We do not agree with that interpretation of the statute.
On one level, section 400.023 lends itself to the interpretation espoused by the trial court, that is, that suits by personal representatives on behalf of deceased residents are allowed only when the nursing home's alleged negligence caused the resident's death. On the other hand, we do not think that such an interpretation was intended by the Legislature in light of section 46.021, Florida Statutes (1993), which provides that "no cause of action dies with the person." To construe section 400.023 as foreclosing all causes of actions for nursing home negligence which does not cause the resident's death is to nullify section 46.021. See generally Beverly Enterprises  Florida, Inc. v. Estate of Maggiacomo, 651 So.2d 816 (Fla. 2d DCA), quashed on other grounds, 661 So.2d 1215 (Fla.1995) (personal representative sued on behalf of deceased resident under section 400.023 for deprivation of nursing home rights for theft of diamond ring which was allegedly forced from finger of resident causing bruises; resident died of unrelated causes); Arthur v. Unicare Facilities, Inc., 602 So.2d 596 (Fla. 2d DCA), rev. denied, 613 So.2d 4 (Fla.1992) (when death results from complained-of injuries, The Wrongful Death Act applies; when death results from an independent cause, claim is preserved by section 46.021, the survival of actions statute). As such, we hold that section 400.023, Florida Statutes (1993), must be read in pari materia with section 46.021, Florida Statutes (1993) in order to reach a logical result. See generally Inciarrano v. State, 447 So.2d 386 (Fla. 4th DCA 1984), quashed on other grounds, 473 So.2d 1272 (Fla.1985) (the Legislature is presumed to know the state of the law in passing statutes and consequently the legislation is to be construed on the premise that the particular statute in question is to be applied relative to other statutes affecting the same subject matter). We therefore reverse the trial court's dismissal of appellant's statutory cause of action, and remand for further proceedings consistent with this opinion.
Greenfield, 705 So.2d at 933-34.
In the en banc Knowles opinion, the district court relied upon and adopted the reasoning of Judge Warner's partial dissent in Greenfield, which provided:
The rights protected under section 400.022 are rights that are largely personal to the resident of the facility, such as the right to religious liberty, see § 400.022(1)(a), the right to organize and participate in groups in the facility, see § 400.022(1)(e), and the right to manage one's personal affairs, see § 400.022(1)(h) to name a few. The resident also has the right to adequate medical care and proper treatment, see § 400.022(1)(l) and under section 400.023(1), if the violation of these rights results in a death then, the personal representative of the estate of the deceased resident has a cause of action. However, as to the other personal rights, I can conceive of valid policy reasons why the legislature would not want such actions to survive, as post-death *5 vindication would not bring any personal satisfaction to the resident. Considering the fact that attorney's fees are available for successful suits proving infringements of these statutory rights, it may have been part of the legislative bargain in passing the resident's bill of rights to limit actions to the lifetime of the patient, other than those alleging that the violation of the rights resulted in the death of the resident.
Moreover, section 400.023(1) was enacted long after section 46.021 and I do not see how the two can be harmonized.... As a general rule of statutory construction, a special statute controls over a general statute. See McKendry v. State, 641 So.2d 45 (Fla.1994).
Knowles, 766 So.2d at 336-37 (quoting Greenfield, 705 So.2d at 934 (Warner, J., concurring in part and dissenting in part)). In a separate opinion, the Fourth District certified the above-mentioned question as one of great public importance. See Knowles, 763 So.2d at 1285.

ANALYSIS
It is well settled that legislative intent is the polestar that guides a court's statutory construction analysis. See State v. Rife, 789 So.2d 288, 292 (Fla.2001); McLaughlin v. State, 721 So.2d 1170, 1172 (Fla.1998). In determining that intent, we have explained that "we look first to the statute's plain meaning." Moonlit Waters Apartments, Inc. v. Cauley, 666 So.2d 898, 900 (Fla.1996). Normally, "[w]hen the language of the statute is clear and unambiguous and conveys a clear and definite meaning, there is no occasion for resorting to the rules of statutory interpretation and construction; the statute must be given its plain and obvious meaning." Holly v. Auld, 450 So.2d 217, 219 (Fla.1984) (quoting A.R. Douglass, Inc., v. McRainey, 102 Fla. 1141, 137 So. 157, 159 (1931)).
Accordingly, we begin our analysis by first determining the plain meaning of the pertinent language in section 400.023(1), Florida Statutes (1997), which provides:
Any resident whose rights as specified in this part are deprived or infringed upon shall have a cause of action against any licensee responsible for the violation. The action may be brought by the resident or his or her guardian, by a person or organization acting on behalf of a resident with the consent of the resident or his or her guardian, or by the personal representative of the estate of the deceased resident when the cause of death resulted from the deprivation or infringement of the decedent's rights.

(Emphasis added.)[1] The district court, and the trial court in its initial ruling, held that section 400.023(1) unambiguously *6 states that a cause of action may be filed by the personal representative of a deceased resident only when the death resulted from a violation of the rights under chapter 400. Knowles, 766 So.2d at 337. It provides that a personal representative of the estate of a deceased resident may bring a cause of action against a nursing home only when the death of the resident resulted from the deprivation or infringement of the decedent's rights. Hence, section 400.023(1), when read by itself, clearly limits the circumstances upon which a personal representative may sue for violation of the decedent's rights.
On its face, the phrase "when the cause of death resulted from the deprivation or infringement of the decedent's rights" puts a limitation on the person who is entitled to sue, in other words, the personal representative of the estate of a deceased resident. The phrase also indicates that the suit may be brought when the death of the deceased resident is caused by the deprivation or infringement of the decedent's rights. Because the Legislature used the term "resulted from," it limited actions by the estate of a deceased resident to those based on violations which caused the decedent's death. Thus, the court below reasonably concluded that the plain meaning of the language used in the statute indicates that only personal representatives of the estate of a deceased resident whose death resulted from the deprivation or infringement of the decedent's rights may bring an action for damages under the statutory rights scheme.

Legislative Intent
Notwithstanding the above, petitioner contends that the district court's interpretation of section 400.023 is contrary to the Legislature's intent. She asserts that even when language of a particular statutory provision appears to be clear, "[i]t is a fundamental rule of statutory construction that legislative intent is the polestar by which the court must be guided, and this intent must be given effect even though it may contradict the strict letter of the statute." State v. Webb, 398 So.2d 820, 824 (Fla.1981) (emphasis added).[2] This Court has also noted that "[i]t is axiomatic that all parts of a statute must be read together in order to achieve a consistent whole." Forsythe v. Longboat Key Beach Erosion Control Dist., 604 So.2d 452, 455 (Fla.1992). "Where possible, courts must give full effect to all statutory provisions and construe related statutory provisions in harmony with one another." Id. Hence, the petitioner asserts that where the language of a particular statutory provision is clear, but the clear meaning does not comport with the Legislature's intent or it conflicts with other provisions of the statute, the Court should not blindly adopt the plain meaning of the statute without additionally considering if the Legislature's intent is supported by such a reading. "The primary guide to statutory interpretation is to determine the purpose of the legislature." Tyson v. Lanier, 156 So.2d 833, 836 (Fla.1963); see also Byrd v. Richardson-Greenshields Sec., Inc., 552 So.2d 1099, *7 1102 (Fla.1989) ("As the Court often has noted, our obligation is to honor the obvious legislative intent and policy behind an enactment, even where that intent requires an interpretation that exceeds the literal language of the statute."); Tampa-Hillsborough County Expressway Auth. v. K.E. Morris Alignment Serv., Inc., 444 So.2d 926, 929 (Fla.1983) ("Statutes should be construed in light of the manifest purpose to be achieved by the legislation."); State v. Egan, 287 So.2d 1, 4 (Fla.1973) ("[T]he purpose of all rules relating to the construction of statutes is to discover the true intention of the law.").
Petitioner claims that her interpretation of section 400.023(1) is supported by (1) the remedial nature of section 400.023(1), which should be construed liberally; (2) the effect of section 400.023(1) when viewed in light of section 400.022, Florida Statutes (1997), sections 768.16-768.27, Florida Statutes (1997), and section 46.021, Florida Statutes (1997); and (3) the legislative purpose and history of section 400.023(1). Accordingly, she asserts, even if the "plain meaning" of the specific language in section 400.023(1) appears to prevent petitioner in the instant case from bringing a statutory cause of action, courts should at least question if the plain meaning of section 400.023(1) is what the Legislature intended.

Remedial Statutes Should be Liberally Construed
Petitioner contends that section 400.023(1) is remedial in nature and therefore should be liberally construed. Indeed, we have held that where a statute is remedial in nature, it should be liberally construed to "preserve and promote access to the remedy intended by the Legislature." Joshua v. City of Gainesville, 768 So.2d 432, 435 (Fla.2000) (holding that chapter 760, Florida Statutes, relating to employment discrimination, is remedial and requires a liberal construction to preserve and promote access to the remedy intended by Legislature); see also Golf Channel v. Jenkins, 752 So.2d 561, 566 (Fla.2000) (liberally construing Whistle-Blower Act in favor of granting access to remedy provided by Legislature). As mentioned above, section 400.023(1) provides a remedy to those residents whose rights have been deprived or infringed upon by the nursing home. Under this analysis, petitioner asserts that a liberal interpretation of the statute would permit suit by the personal representative of the estate of a deceased resident whose death did not result from a violation of the act but who was injured by said violation.
However, it is apparent that such an interpretation would alter the clear and unambiguous language of section 400.023(1) by either injecting a different circumstance upon which suit may be brought or by ignoring the language expressly used in the statute. In other words, to give the statute the liberal interpretation urged by petitioner, this Court would have to add words to the statute stating that the cause of death is irrelevant or it would have to ignore the term "when death resulted from." The law is well settled that courts in this state are "without power to construe an unambiguous statute in a way which would extend, modify, or limit, its express terms or its reasonable and obvious implications." Holly, 450 So.2d at 219 (quoting Am. Bankers Life Assurance Co. of Fla. v. Williams, 212 So.2d 777, 778 (Fla. 1st DCA 1968)). Thus, while petitioner is correct that section 400.023(1) should be liberally construed, such construction does not mean that this Court may rewrite the statute or ignore the words chosen by the Legislature so as to expand its terms. See id.

Consideration of Related Statutes
Petitioner also contends that courts should avoid interpreting a statute in a *8 way that would render related statutes meaningless. She argues that instead of construing the statutory phrase in section 400.023(1) in isolation, the court below should have considered section 400.023(1) with other, related statutes in determining legislative intent. Petitioner points specifically to subsection 400.022(1)(h)(4), which states that the nursing home facility must hold, safeguard, manage and account for the resident's personal funds deposited with the facility and, upon the death of the resident, convey those funds to the decedent's beneficiary or person responsible for administering the decedent's estate within thirty days. Petitioner argues that because this right does not become effective until the death of the resident and because the violation of this right would never lead to death, this right would not be actionable under section 400.023(1) as construed by the court below, thereby rendering it meaningless.
We have stated that "[i]t is axiomatic that all parts of a statute must be read together in order to achieve a consistent whole." Forsythe, 604 So.2d at 455. Furthermore, where it is possible, courts must give full effect to all statutory provisions and construe related statutory provisions in harmony with one another. Id. However, we disagree here that the lower court's construction of section 400.023(1) would render the right identified in section 400.022(1)(h)(4) meaningless. First, subsection 400.022(1)(h)(4) does not become effective until the resident dies. At that time, the facility has the obligation to return all deposited funds to the administrator of the resident's estate or, if none has been appointed, to the resident's spouse or next of kin. Thus, there is no danger of this right abating upon the resident's death. Second, section 400.162, which deals with the property and personal affairs of the residents, requires the facility to return all deposited funds to the administrator of the decedent's estate. See § 400.162, Fla. Stat. (1997). Specifically, section 400.162(6) states:
In the event of the death of a resident, a licensee shall return all refunds and funds held in trust to the resident's personal representative, if one has been appointed at the time the nursing home disburses such funds, and if not, to the resident's spouse or adult next of kin named in a beneficiary designation form provided by the nursing home to the resident.
Thus, a personal representative of the resident's estate would not need to invoke the provisions of section 400.023(1) in order to secure the resident's funds. Rather, the personal representative can ensure the return of all funds under section 400.162. Accordingly, we disagree that the statutory provisions in section 400.022 have been rendered meaningless by the lower court's construction of section 400.023(1).

Wrongful Death Act and Survival Statute
Next, petitioner argues that the court below ignored the legislative intent of section 400.023(1) as evidenced by (1) existing law and (2) the legislative history of the statute. First, petitioner argues that the lower court failed to consider the different purposes of two related statutes. See § 46.021, Fla. Stat. (1997) ("Survival Statute"); §§ 768.16-768.27, Fla. Stat. (1997) ("Wrongful Death Act"). The Survival Statute states: "No cause of action dies with the person. All causes of action survive and may be commenced, prosecuted, and defended in the name of the person prescribed by law." § 46.021, Fla. Stat. (1997).
The Wrongful Death Act, on the other hand, permits a cause of action "[w]hen the death of a person is caused by *9 the wrongful act, negligence, default, or breach of contract or warranty of any person." § 768.19, Fla. Stat. (1997). Under the Wrongful Death Act, however, a personal injury claim abates where personal injuries suffered from the negligent or wrongful act result in death. See Martin v. United Sec. Servs., Inc., 314 So.2d 765, 770 (Fla.1975) (holding that no separate statutory action for personal injuries resulting in death can survive the decedent's demise). Damages are limited to the survivor's loss of support and services, companionship, and his or her own pain and suffering. The estate may also recover loss of earnings of the deceased and medical and funeral expenses. See § 768.21, Fla. Stat. (1997).
Petitioner argues that the court below erroneously applied the canon of statutory construction that the specific statute controls over a general statute, when it should have read section 400.023(1) in harmony with section 46.021. It is true that courts must presume that the Legislature passes statutes with the knowledge of prior existing statutes and that "the legislature does not intend to keep contradictory enactments on the books or to effect so important a measure as the repeal of a law without expressing an intention to do so." Woodgate Dev. Corp. v. Hamilton Inv. Trust, 351 So.2d 14, 16 (Fla.1977). We have also noted that "[w]here possible, it is the duty of the courts to adopt that construction of a statutory provision which harmonizes and reconciles it with other provisions of the same act." Id. (emphasis added). However, as noted by the Third District, "[t]here must be a hopeless inconsistency before rules of construction are applied to defeat the plain language of one of the statutes." Agency for Health Care Admin. v. Estate of Johnson, 743 So.2d 83, 87 (Fla. 3d DCA 1999).
On the one hand, section 400.023, as written by the Legislature and construed by the court below, might appear to extinguish a statutory cause of action for those claimants in petitioner's position; the district court's interpretation of section 400.023 precludes a personal representative's ability to bring a survival action based on the statutory cause of action where death was not the result of a violation of the act. The effect of this interpretation could be viewed as extinguishing or abating a cause of action the decedent clearly would have had under the statute, had he not died. Such a result appears to conflict with the purpose of section 46.021, which clearly provides that all causes of action survive the death of a person. However, because this is a legislatively created cause of action to be brought by personal representatives only under certain circumstances, we conclude the Legislature had the authority both to determine the extent of the statutory right and to prescribe or limit the remedies available for a violation of the right.
More importantly, section 400.023(1) does not "cut off" a deceased resident's right to bring a cause of action. Section 400.023(1) states that "[t]he remedies provided in this section are in addition to and cumulative with other legal and administrative remedies available to a resident and to the agency." § 400.023(1), Fla. Stat. (1997). Thus, in actuality, section 400.023(1) does not negate or extinguish a cause of action that would otherwise exist as among "other legal and administrative remedies." Rather, such resident (or estate) can bring a common law negligence action as was done in this case. Furthermore, in addition to common law negligence, the facility may be liable depending on the particular facts, under the theories of common law intentional torts, like battery, or abuse of a vulnerable adult under section 415.1111, Florida Statutes (1997). *10 Thus, section 400.023(1) does not necessarily conflict with section 46.021.
Furthermore, we note petitioner was not deprived of or prevented from relying on the violation of Mr. Knowles' chapter 400 rights, because although petitioner proceeded on a common law negligence theory she was permitted to refer to the rights listed in section 400.022 to establish her claim. More importantly, the trial court instructed the jury that residents in nursing homes have rights under section 400.022 and that a violation of those rights constitutes negligence.[3] Thus, while petitioner's statutory claim under section 400.023(1) may have been dismissed, the trial court permitted petitioner to proceed in a manner substantially similar to the statutory cause of action.[4]

Legislative History
Finally, petitioner argues that the district court's interpretation of section 400.023(1) is inconsistent with the legislative purpose and legislative history of the statute. However, the rules of statutory construction are the means by which courts seek to determine legislative intent only when that intent is not plain and obvious enough to be conclusive. See McDonald v. Roland, 65 So.2d 12, 14 (Fla.1953). In that instance, it is well settled that courts will consider the "history of a statute as an aid in determining the Legislature's intent." Id. However, the Fourth District quite properly ruled that it would not consider the legislative history of the statute because it found that "section 400.023(1) is clear and, thus, leaves no room for resort to a consideration of legislative history to determine its meaning." Knowles, 766 So.2d at 337. Because we agree that the language used by the Legislature is unambiguous, it is not necessary to examine the legislative history.

CONCLUSION
Because we too find the language of the statute clear and unambiguous, we agree with the Fourth District's analysis in this case. Accordingly, we answer the certified question in the negative and affirm the Fourth District's decision in this case.
It is so ordered.
WELLS, ANSTEAD, CANTERO, and BELL, JJ., concur.
CANTERO, J., concurs with an opinion, in which WELLS, ANSTEAD, and BELL, JJ., concur.
*11 LEWIS, J., dissents with an opinion, in which QUINCE, J., concurs.
PARIENTE, C.J., recused.
CANTERO, J., concurring.
I concur in the majority opinion. In my view (and that of the majority, as well as the unanimous en banc district court), the statutory language is clear and unambiguous. I write only to address the dissent's contention that, to justify its conclusion, the majority adds language to the statute.
When interpreting a statute, our first resort is to the words the Legislature chose. "The cardinal rule of statutory construction is `that a statute should be construed so as to ascertain and give effect to the intention of the Legislature as expressed in the statute.'" City of Tampa v. Thatcher Glass Corp., 445 So.2d 578, 579 (Fla.1984) (emphasis added). This Court has stated that
[i]n making a judicial effort to ascertain the legislative intent implicit in a statute, the courts are bound by the plain and definite language of the statute and are not authorized to engage in semantic niceties or speculations. If the language of the statute is clear and unequivocal, then the legislative intent must be derived from the words used without involving incidental rules of construction or engaging in speculation as to what the judges might think that the legislators intended or should have intended.
Tropical Coach Line, Inc. v. Carter, 121 So.2d 779, 782 (Fla.1960).
The issue here is whether, when a nursing home resident dies, the personal representative may bring an action under the statute only when the cause of death resulted from the deprivation or infringement of the decedent's rights. I think the statute clearly answers that question "yes." The statute in question, section 400.023(1), Florida Statutes (1997) (emphasis added), provides as follows:
Any resident whose rights as specified in this part are deprived or infringed upon shall have a cause of action against any licensee responsible for the violation. The action may be brought by the resident or his or her guardian, by a person or organization acting on behalf of a resident with the consent of the resident or his or her guardian, or by the personal representative of the estate of the deceased resident when the cause of death resulted from the deprivation or infringement of the decedent's rights.

The statute allows a personal representative of the estate of the deceased resident to sue "when the cause of death resulted from the deprivation or infringement of the decedent's rights."
The district court, sitting en banc, reading this same language, unanimously concluded that "the language of section 400.023 unambiguously provides that a personal representative of a deceased, nursing home resident may bring an action against the nursing home for violation of the Patient's Bill of Rights only when the deprivation or infringement of the resident's rights caused the patient's death." Beverly Enterprises-Florida, Inc. v. Knowles, 766 So.2d 335, 336 (Fla. 4th DCA 2000); accord Estate of Doyle v. Mariner Healthcare of Nashville, Inc., 889 So.2d 829, 830 (Fla. 2d DCA 2004) (agreeing that statute "is unambiguous" and adopting Fourth District's analysis of effect of statute); contra Estate of Youngblood v. Halifax Convalescent Center, Ltd., 874 So.2d 596, 604-05, 606 (Fla. 5th DCA 2004) (holding statute not clear and certifying conflict with Knowles). I agree. In my view, therefore, because the language of the statute is clear and unambiguous, the analysis must end there. While this may seem simplistic, it is nevertheless what is *12 required; we have no prerogative to do otherwise. "[T]he legislature is assumed to have expressed its intent through the words found in a statute." Zuckerman v. Alter, 615 So.2d 661, 663 (Fla.1993). Thus, "[i]f the language of a statute is clear and unambiguous, the legislative intent must be derived from the words used without involving rules of construction or speculating as to what the legislature intended." Id. In other words, not only do we not need to resort to legislative history, as the dissent does, to understand this plain meaning; we cannot do so. See Taylor Woodrow Constr. Corp. v. Burke Co., 606 So.2d 1154, 1155 (Fla.1992) ("The court should look to legislative history only if the court determines that a statute's language is ambiguous.").
The dissent argues that to interpret the clause "when the cause of death resulted from the deprivation or infringement of the decedent's rights" as limiting the circumstances under which a personal representative can sue would actually add another clause of limitation to the statute. Dissenting op. at 22.[5] This is not the case. Rather, the statute has this effect because of the plain meaning of the limiting clause. By stating that the personal representative may bring suit under the statute "when the cause of death resulted from the deprivation or infringement of the decedent's rights," the Legislature has limited the personal representative's power to bring suit under this statute. The word "when," as used here, means "in the event that" or "in what circumstances," "on condition that," or "if." See Webster's Third New International Dictionary 2602 (1993). Cf. People v. White, 144 Cal.Rptr. 128, 130, 77 Cal.App.3d Supp. 17 (1978) (stating that in statute commencing with word "whenever," the word means "if" and "at any time when"). In other words, the personal representative may bring suit "when" or "if" the condition of the clause is satisfied.
In context, the word "when" in this case means "only when." The words "if" and "when," when used to introduce a condition, are commonly understood to mean "if and only if" or "when and only when." For example, in Kinder v. State, 779 So.2d 512 (Fla. 2d DCA 2000), approved, 830 So.2d 832 (Fla.2002), the Second District considered the meaning of a limiting clause in a statute providing that "[t]he trial may be continued upon the request of either party and a showing of good cause, or by the court on its own motion in the interests of justice, when the person will not be substantially prejudiced." Id. at 514 (emphasis added) (quoting § 394.916(2), Fla. Stat. (1999)). The court concluded that the statute provided that a "continuance may only be granted when the detainee will not be substantially prejudiced." Id. at 515 (emphasis added). In State v. Goode, 830 So.2d 817 (Fla.2002), we reiterated that in this statute "when" meant "only when." Id. at 824 ("As noted above, section 394.916(2) allows for a continuance, upon a showing of good cause by one of the parties or by the court's own motion, only where the detainee will not be substantially prejudiced." (emphasis added)).[6]
Other courts also have recognized that, in the context of a statute or rule, "when" must mean "only when." See, e.g., United *13 States v. Anderson, No. 87-00014-1, 1987 WL 7687 (E.D.Pa. Mar.9, 1987) (explaining that a federal pretrial detention statute, 18 U.S.C. § 3142(e), which stated that "if the judicial officer finds no conditions ... will reasonably assure" a person's appearance and community safety, such officer "shall order the detention of the person before trial" meant "pre-trial detention can only be ordered when" those findings are made); Colony-Lobster Pot Corp. v. Director of Revenue, 770 S.W.2d 705, 706-07 (Mo.Ct.App.1989) (interpreting a statute providing that when a party prevails, the court may award litigation expenses "if it finds that the position of the state was vexatious or was not substantially justified," to allow expenses "under certain conditions if, and only if" the state's position was vexatious or not substantially justified); Davis v. State, 99 Nev. 25, 656 P.2d 855, 856 (1983) (stating that an implied consent statute listing conditions as to "when" it applied "bec[ame] operative in only two situations: when a driver [wa]s arrested, or when a driver [wa]s dead, unconscious, or otherwise in a condition rendering him incapable of being arrested").
The majority is mindful that "[w]e are not at liberty to add words to statutes that were not placed there by the Legislature." Hayes v. State, 750 So.2d 1, 4 (Fla.1999). To construe the statute to allow a personal representative to sue regardless of whether "the cause of death resulted from the deprivation or infringement of the decedent's rights" would judicially delete the entire limiting phrase from the statute. But "[w]e are compelled by well-established norms of statutory construction to choose that interpretation of statutes and rules which renders their provisions meaningful. Statutory interpretations that render statutory provisions superfluous are, and should be, disfavored." Hawkins v. Ford Motor Co., 748 So.2d 993, 1000 (Fla.1999) (quoting Johnson v. Feder, 485 So.2d 409, 411 (Fla.1986)); see Burke, 606 So.2d at 1156 ("Where the statutory provision is clear and not unreasonable or illogical in its operation, the court may not go outside the statute to give it a different meaning.").
The dissent contends that this plain language reading of the statute is somehow inconsistent with the First District's opinion in Williams v. Bay Hospital, Inc., 471 So.2d 626 (Fla. 1st DCA 1985), which interpreted the Wrongful Death Act (WDA). I disagree. The WDA provides in part as follows: "When a personal injury to the decedent results in death, no action for the personal injury shall survive, and any such action pending at the time of death shall abate." § 768.20, Fla. Stat. (2003) (emphasis added). The conditional "when" clause limits the survival of personal injury actions  i.e., such actions do not survive "[w]hen a personal injury to the decedent results in death." Thus, other personal injury actions  those where personal injury did not result in death  do survive. See Martin v. United Sec. Servs., Inc., 314 So.2d 765 (Fla.1975) ("The only logical construction of the ... sentence is that it expresses the legislative intent that a separate lawsuit for death-resulting personal injuries cannot be brought as a survival action under Section 46.021."). Reading the plain language of the WDA, the First District in Williams correctly recognized that the Act did not eliminate survival claims for pain and suffering or other damages for injuries not resulting in death. 471 So.2d at 629. The "when" clauses in the WDA and section 400.023(1) are similarly worded. Both place conditions on causes of action. Both prescribe which actions can be maintained and which cannot. Williams is consistent with the majority's conclusion in this case.
*14 The dissent argues that the case before us represents an "unintended consequence of the specific language chosen for the amending legislation" and thus we must resort to legislative history. Dissenting op. at 18. As noted above, however, the Legislature is presumed to know the meaning of the words it chooses. Thus, where statutory language is unambiguous, we cannot use legislative history to contradict it. Even if we were to do so, however, the dissent's use of legislative history here illustrates its questionable usefulness. For example, the dissent explains that the legislator sponsoring the amendment intended to provide a remedy under the Act where a nursing home resident's death resulted from actions violating the Act. Of course, the majority's holding is that the plain language of the statute provides this remedy. The problem of using a single legislator's comments to "prove" the intent of the Legislature, however, is that the clause at issue was not even included in the amendment the representative offered, which the dissent quotes. Dissenting op. at 21. That clause was inserted into the amendment on the floors of the two houses of the Legislature. See Fla. H.R. Jour. 232 (Reg.Sess.1986); Fla. S. Jour. 258 (Reg.Sess.1986). The limitation was thus an amendment to the amendment. The best way to determine the Legislature's intent remains the language it used in the statute. See Crosby v. National Foreign Trade Council, 530 U.S. 363, 390-91, 120 S.Ct. 2288, 147 L.Ed.2d 352 (2000) (Scalia, J., concurring) ("The only reliable indication of that [legislative] intent  the only thing we know for sure can be attributed to all of them  is the words of the bill that they voted to make law.").
WELLS, ANSTEAD, and BELL, JJ., concur.
LEWIS, J., dissenting.
I cannot agree with the majority's interpretation of the Nursing Home Residents' Rights Act, which construes legislation so obviously intended to strengthen the legal remedies available to injured nursing home residents in a fashion wholly contrary to its very purpose  resulting, ironically, in an evisceration of such residents' legal rights. The majority even incorrectly relies upon and quotes inapplicable context from Martin v. United Security Services, Inc., 314 So.2d 765 (Fla.1975), as an authority and for support when such decision does not involve the critical fact which creates the issue before us today. Martin involved only the issue concerning the merger of survival and wrongful death actions where the wrongful act resulted in death, not the survival of actions for wrongful conduct which has not resulted in death, which is the question presented in this case. Therefore, I dissent.
To correctly ascertain the intent of the Legislature in enacting and amending section 400.023(1) of the Florida Statutes, it is necessary to review the historical formation and development of chapter 400 itself. The Residents' Bill of Rights detailed in section 400.022, as well as the civil enforcement provision at issue in the instant action, were enacted largely to remedy the circumstances discovered and publicized by two 1979 Dade County grand jury reports which graphically described horrendous conditions in certain residential facilities. See generally Romano v. Manor Care, Inc., 861 So.2d 59 (Fla. 4th DCA 2003); Troy J. Crotts & Daniel A. Martinez, The Nursing Home Residents' Rights Act-A Good Idea Gone Bad!, 26 Stetson L.Rev. 599 (1996). In response to public criticism that the then-existing nursing home oversight system did not include adequate provisions for enforcement, the Legislature included a "private *15 attorney general" section in the statutory scheme. At the time of the enactment of this important enforcement concept in 1980, section 400.023 provided:
Any patient whose rights as specified in this part are deprived or infringed upon shall have a cause of action against any facility responsible for the violation. The action may be brought by the patient or his guardian or by a person or organization acting on behalf of a patient with the consent of the patient or his guardian ... to enforce such rights....
§ 400.023, Fla. Stat. (1981).
At the time section 400.023 became operative, section 46.021 had been in effect as Florida's survival statute for decades. Unchanged today, section 46.021 provides:
No cause of action dies with the person. All causes of action survive and may be commenced, prosecuted, and defended in the name of the person prescribed by law.
§ 46.021, Fla. Stat. (2001). The Third District Court of Appeal expressed the intended purpose of the survival statute in Levy v. Baptist Hospital of Miami, Inc., 210 So.2d 730 (Fla. 3d DCA 1968), long ago:
We believe that the intent expressed by the language of [the survival statute] is the preservation of an already existing liability, rather than the creation of some new, independent action or liability. The personal representative receives no more and no less than the decedent would have had he lived, i.e. subject to the strength and weakness of the decedent's cause of action had he survived. The liability is the same and there are no new elements of damage.
Id. at 731. Thus, where it is alleged that the death of a person did not result from the conduct of the decedent and was the result of some other cause, a right of action possessed by that person before his or her death survives the life of the decedent and the entirety of the claim passes to his or her estate. See Williams v. Bay Hosp., Inc., 471 So.2d 626, 629 (Fla. 1st DCA 1985); Tappan v. Fla. Med. Ctr., Inc., 488 So.2d 630, 631 (Fla. 4th DCA 1986). Only the preservation of the entirety of a decedent's claim through transferral to his or her estate accomplishes the goal of section 46.021  continuation of claims as if the originally injured party had not died.
Historically, Florida's method of compensating tort victims who later died as a result of the negligence of the tortfeasor originally followed the common law model, which allowed two separate and independent causes of action. The administrator of a decedent's estate was authorized to bring a survival action on behalf of the deceased for the damages suffered by the deceased before his or her death. See English v. United States, 204 F.2d 808, 810 (5th Cir.1953); Epps v. Ry. Express Agency, 40 So.2d 131, 132 (Fla.1949); Levy v. Baptist Hosp. of Miami, Inc., 210 So.2d 730, 731 (Fla. 3d DCA 1968). Additionally, a widow, a widower, a surviving child, a dependent, or an administrator could maintain a separate wrongful death action.
In 1973 the Legislature substantially restructured the system, enacting the Florida Wrongful Death Act. This Act merely merged the survival action for personal injuries which caused death and the wrongful death action into one proceeding only when the wrongful conduct caused the death, and eliminated all claims for the pain and suffering of the decedent from the time of injury to the time of death. See Fla. Clarklift, Inc. v. Reutimann, 323 So.2d 640, 641 (Fla. 2d DCA 1975). It did not, however, abolish survival actions where the tort did not cause death. The history of this legislation, as well as the judicial decisions interpreting it, make it absolutely clear that the Act affected only causes of action in which the underlying *16 wrongful act actually caused the death of the decedent, not scenarios, such as that before us today, in which a tortious act was itself nonlethal but the wronged party died prior to filing a cause of action therefor.
Florida's courts have long recognized the principle that the enactment of Florida's modern Wrongful Death Act did not abolish or nullify the full and proper scope of the Survival Act, which preserves independent claims by decedents' estates based upon wrongs which preceded, but did not cause, death. In Williams v. Bay Hospital, Inc., 471 So.2d 626 (Fla. 1st DCA 1985), the First District detailed the debate and proper resolution well:
Our review persuades us that at the heart of this controversy is appellee's contention that the 1972 Wrongful Death Act... by eliminating claims for pain and suffering of a person injured by an act of medical malpractice where death results from such injuries, also eliminated claims for pain and suffering of the injured person (as well as other provable damages) where death did not result from the medical malpractice. We cannot agree with this interpretation. At the risk of oversimplifying what is perhaps a more complex problem, we are inclined to think it is fundamental that the wrongful death statute is not applicable except in wrongful death actions, i.e., where it is claimed that the death of a person was "caused by the wrongful act, negligence, [or] default ..." of another. § 768.19, Florida Statutes (1983). The constitutionality of the wrongful death statute eliminating claims for pain and suffering of the decedent was upheld, in Martin v. United Security Services, Inc., 314 So.2d 765 (Fla.1975), because the act provided a suitable alternative to recovery of damages for such claims by substituting therefore the right of close relatives to recover for their own pain and suffering occasioned by loss of a loved one, "the clear purpose being that any recovery should be for the living and not for the dead." Id. at 769. However, no provision was made in the Wrongful Death Act or by other enactment for elimination of claims for pain and suffering, or other damages, where it is not alleged that death resulted from the claimed negligence. As stated in Martin, supra, the intent of the amended Wrongful Death Act is that "a separate lawsuit for death-resulting personal injuries cannot be brought as a survival action under Section 46.021." Id. at 770. This, in our opinion, does not preclude a survival action for "non-death-resulting injuries."
Id. at 629 (some emphasis added). Likewise, the Second District has deemed it "obvious" that "one's right to maintain an action for damages where death was not the result of injuries sustained" existed undisturbed through the Survival Act following passage of the Wrongful Death Act. Smith v. Lusk, 356 So.2d 1309, 1311 (Fla. 2d DCA 1978). The principle that "the legislature did not, in fact, impliedly abolish the survival statute by enacting the wrongful death act," id., is both well founded and settled law in Florida.
The First District clearly recognized the absurdity of the result produced by the majority today when it stated in Williams:
Under the appellee's [the majority's] view, the result would be that medical providers or others [nursing homes] would be free to negligently injure patients with impunity, so long as death did not result from the injuries. Again, Martin instructs us that "the survival statute is still applicable to preserve other actions [chapter 400] which the decedent may have brought or was bringing prior to his death."
*17 471 So.2d at 629. The majority today produces the result of which the district court warned in Williams. The Second District has also noted the error in relying upon Martin for authority, as does the majority today, where a wrongful act has not produced death. In Smith v. Lusk, 356 So.2d 1309 (Fla. 2d DCA 1978), the court noted in permitting a survival action to proceed:
We thoroughly agree with Martin but note that it is distinguishable from the case sub judice because in Martin the personal injury to the decedent resulted in his death. Also, we note that the Martin court, in its wisdom, observed in footnote 18 at page 770: "However, the survival statute is still applicable to preserve other actions which the decedent may have brought or was bringing prior to his death."
....
Obviously, in Martin, the Supreme Court wished to continue one's right to maintain an action for damages where death was not the result of injuries sustained.
Id. at 1311 (emphasis supplied).
In my view, it is absolutely clear that the interaction between section 400.023, in its original form, and Florida's survival statute preserved all causes of action for nonlethal violations of nursing home residents' section 400.022 rights, in the event of a resident's death due to a cause unrelated to any of the elements of chapter 400. Nothing in the generally applicable law of Florida acts to limit or foreclose the application of the Survival Act to causes of action which arise under chapter 400. It was only where the violation of the resident's chapter 400 rights resulted in the person's death could the Wrongful Death Act even be legitimately argued as applicable to subsume the resident's chapter 400 civil action entirely.[7]See § 768.20, Fla. Stat. (1997) (providing "[w]hen a personal injury to the decedent results in his death, no action for personal injury shall survive, and any such action pending at the time of death shall abate"). Thus, under the original provisions of section 400.023, along with Florida's survival and wrongful death statutes, in the scenario in which a nursing home resident's rights were violated and he or she later died due to unrelated causes, the decedent's estate would have had a continuing chapter 400 remedy for the wrongful conduct under the survival statute. Cf. id.
Recognizing that care providers had begun asserting the defense that violations of section 400.022 could not be remedied in any fashion if the nursing home resident died as a result of chapter 400 violations subsequent to the violation, the Legislature amended section 400.023 in 1986. This is the revision perverted by the majority today. This revision was designed and intended to clarify the existence of a civil cause of action for violations of section 400.022 which resulted in death, after the death of the nursing home resident, to be pursued by the resident's personal representative  an action to clearly permit a claim that would not be subsumed by the Wrongful Death Act. The statute was amended to state:
The [section 400.023] action may be brought by the resident or his guardian, by a person or organization acting on behalf of the resident with the consent of the resident or his guardian, or by the personal representative of the estate of a deceased resident when the cause of *18 death resulted from the deprivation or infringement of the decedent's rights.

§ 400.023, Fla. Stat. (Supp.1986) (emphasis supplied).
Unfortunately, an unintended consequence of the specific language chosen for the amending legislation has been the creation of circumstances that have afforded an opportunity for care providers to now assert arguments that could pervert the entire statute. For a number of reasons, it is necessary to at least refer to the legislative intent and history of the statutory provision at issue, due to the conflict created by the arguments asserted by care providers with regard to the language selected by the Legislature for the 1986 amendment to section 400.023. First, as may be recognized by considering the text of section 400.023, the arguments presented by the care providers would cause the statute itself to become internally inconsistent. The United States District Court for the Middle District of Florida has specifically noted that the following emphasized language from the statute is internally contradictory:
Any resident whose rights as specified in [Fla. Stat. § 400.022] are deprived or infringed upon shall have a cause of action against any licensee responsible for the violation. The action may be brought by ... the personal representative of the estate of a deceased resident when the cause of death resulted from the deprivation or infringement of the decedent's rights. The action may be brought in any court of competent jurisdiction to enforce such rights and to recover actual and punitive damages for any deprivation or infringement on the rights of the resident.

Thompson v. Kindred Nursing Ctrs. East, LLC, 211 F.Supp.2d 1345, 1349 (M.D.Fla.2002) (quoting § 400.023, Fla. Stat. (1997)) (alterations in original). As identified in Thompson, the first emphasized phrase has been argued to be a basis to foreclose actions filed by estates when a decedent's death did not result from a violation of the nursing home resident's rights, while the second emphasized portion clearly authorizes actions for any infringement of a resident's chapter 400 rights. This internal inconsistency alone, which the majority and concurring views ignore, is sufficient to cause reference to the legislative history of chapter 400. See generally Capers v. State, 678 So.2d 330 (Fla.1996); Levine v. Levine, 734 So.2d 1191 (Fla. 2d DCA 1999). The majority and concurring opinions totally omit this sentence from all of the statute quotations and all analysis. Additionally, as stated by this Court:
An act's legislative history is an invaluable tool in construing the provisions thereof....
The rule seems to be well established [that] the interpretation of a statute by the legislative department goes far to remove doubt as to the meaning of the law. The court has the right and the duty, in arriving at the correct meaning of a prior statute, to consider subsequent legislation.
Ivey v. Chicago Ins. Co., 410 So.2d 494, 497 (Fla.1982) (quoting Gay v. Canada Dry Bottling Co. of Fla., 59 So.2d 788, 790 (Fla.1952)) (emphasis supplied).
While the language added to section 400.023 in 1986 was clearly intended only to provide a remedy for the situation in which the violation of a nursing home resident's rights resulted in death, the amendment has now been argued to totally disallow survival claims filed by an estate based upon wrongs totally unrelated to the decedent's cause of death, contrary to existing law. The possibility of this extreme result has resulted in conflicting decisions within the Florida courts, see Estate of Youngblood v. Halifax Convalescent Ctr., Ltd., *19 874 So.2d 596 (Fla. 5th DCA 2004); Beverly Enterprises-Florida, Inc. v. Knowles, 766 So.2d 335, 336 (Fla. 4th DCA 2000); Greenfield v. Manor Care, Inc., 705 So.2d 926, 933 (Fla. 4th DCA 1997). In Beverly Enterprises-Florida, Inc., v. Maggiacomo, 651 So.2d 816 (Fla. 2d DCA 1995), quashed, 661 So.2d 1215 (Fla.1995), the underlying action was based upon a claim of a personal representative pursuant to section 400.023 for pre-death injuries sustained in a nursing home prior to a death for unrelated causes, as is the present case. The district court of appeal quashed a trial court's order permitting the addition of a claim for punitive damages but this Court quashed the decision of the district court of appeal on the procedural issue only and remanded for further trial court proceedings. In Arthur v. Unicare Health Facilities, Inc., 602 So.2d 596 (Fla. 2d DCA 1992), the court also reversed a summary judgment in favor of a nursing home with the majority permitting an action to proceed, as described in the dissent, for recovery by an estate under section 400.023, alternatively for injuries prior to death that did not cause death.
In addressing the specific issue before us today, whether alleged deprivations of chapter 400 rights suffered during one's lifetime dissolve and disappear simply because those injuries and deprivations cannot be directly causally connected to death, the court in Estate of Youngblood v. Halifax Convalescent Center Ltd., 874 So.2d 596 (Fla. 5th DCA 2004), reasoned that the language of section 400.023 is at best unclear. Relying upon Finley v. Scott, 707 So.2d 1112 (Fla.1998); Parole Commission v. Cooper, 701 So.2d 543 (Fla.1997); Greenberg v. Cardiology Surgical Ass'n, 855 So.2d 234 (Fla. 1st DCA 2003), and additional authorities in those cases, the court turned to a more recent version of the unclear statutory provision for an answer to determine legislative intent, which the majority and concurring views here refuse to do because it would totally destroy their analysis that the statute is clear simply because they say it is clear.
Additionally, both the majority and concurring views fail to acknowledge or even consider that reference to matters extrinsic to the particular words of a statute is not limited to only when the language of a statute is itself ambiguous or unclear. This Court has instructed on two applicable principles:
When construing a particular part of a statute, it is only when the language being construed in and of itself is of doubtful meaning or doubt as to its meaning is engendered by apparent inconsistency with other parts of the same or a closely related statute that any matter extrinsic the statute may be considered by the Court in arriving at the meaning of the language employed by the Legislature.

Fla. State Racing Comm'n v. McLaughlin, 102 So.2d 574, 576 (Fla.1958) (emphasis supplied).
We have also instructed:
A law should be construed together with any other law relating to the same purpose such that they are in harmony. Courts should avoid a construction which places in conflict statutes which cover the same general field. The law favors a rational, sensible construction.
City of Boca Raton v. Gidman, 440 So.2d 1277, 1282 (Fla.1983) (citations omitted).
Florida's survival statute is precisely such a statute that the majority and concurring views simply repeal by implication in the nursing home context, a result I cannot justify with the applicable law. This conflict in and of itself requires that we explore the parameters of the actions impacted. Relying on decisions from this Court, Judge Ervin wrote in DeBolt v. *20 Department of Health and Rehabilitative Services, 427 So.2d 221 (Fla. 1st DCA 1983):
Where, as in this case, two statutes are found to be in conflict, rules of statutory construction must be applied to reconcile, if possible, the conflict. We are aided in this task by the maxim that "legislative intent is the pole star by which we must be guided in interpreting the provisions of a law." In our attempt to discern the legislative intent behind the conflicting statutes, we must consider "the history of the Act, the evil to be corrected, the purpose of the enactment, and the law then in existence bearing on the same subject."
Id. at 224 (citation omitted) (quoting Parker v. State, 406 So.2d 1089, 1092 (Fla.1981), and State Board of Accountancy v. Webb, 51 So.2d 296, 299 (Fla.1951)).
More recently, we stated:
Where ... two statutes are found to be in conflict, rules of statutory construction must be applied to reconcile ... the conflict.
City of Clearwater v. Acker, 755 So.2d 597, 600 (Fla.2000) (quoting DeBolt, 427 So.2d at 224).
In my view, the survival statute in which no cause of action dies and all actions survive is in irrefutable conflict with the analysis of the majority and concurring views. Therefore, reference to legislative history and intent is both necessary and proper for multiple reasons. Certainly, when multiple appellate panels and a federal trial judge have analyzed a statute and the jurists have construed the provision differently, even though they have later altered the position, ambiguity and conflict necessitating the gathering of all possible information to ascertain the Legislature's original intent exists.
The statutory language within section 400.023 which is argued to provide for the elimination of causes of action filed by estates for the violation of chapter 400 prior to the decedent's death due to other causes certainly conflicts with section 46.021 of the Florida Statutes, which provides that "no cause of action dies with the person." § 46.021, Fla. Stat. (2001). Indeed, conflict necessitating reference to legislative intent and history could not be more stark than in the situation in which a statutory provision is argued to purportedly eliminate a cause of action due to death of the injured party, and a separate statutory provision provides that "no cause of action dies with the person" and "all causes of action survive." Because at least three distinct reasons exist upon which to utilize reference to the legislative history of section 400.023 in the instant case, I specifically contest and disagree with the concurring view's statement that "we [need not] resort to legislative history ... to understand the [statute's] plain meaning." Concurring op. at 12. The majority and concurring simplistic approach ignores the status of the law and all other relevant factors existing both at the time of amendment and at the time of later amendments. One must understand and consider the totality of factors that interact to create the present problem before the issue can be properly resolved. Simply proclaiming a statute to be clear and refusing to consider a conflicting statute does not make the statute clear.
It is important to consider that in sponsoring the 1986 amendment, Representative Canady clearly recognized the survival of actions and stated the amendment's purpose to only be:
[T]here's an anomaly under the law that if a nursing home resident is abused and they survive that they can bring a lawsuit. However, if they're abused so badly that they die, the cause of action is *21 lost. So this bill would simply amend the statute to provide that the personal representative of the estate of a deceased nursing home resident would also be able to bring an action under Chapter 400 to redress the rights of a deceased nursing home resident.
Beverly Enterprises-Florida, Inc. v. Spilman, 661 So.2d 867, 869 (Fla. 5th DCA 1995) (quoting committee hearing transcript). In my view, the majority fails to understand and apply this very significant factor while the concurring opinion simply attempts to demean its existence. As is evident, the 1986 amendment  the precise statutory language at issue in the present action  was intended to expand protection to clarify that civil actions by personal representatives were proper, expand the range of remedies available for violations of section 400.022, and not restrict or reduce the protection designed, intended, and afforded by the Legislature, nor to abolish a survival action, as results from the majority decision today. Because the Legislature is presumed to know the current state of the law at the time it deliberates upon changes thereto, see Nicoll v. Baker, 668 So.2d 989, 991 (Fla.1996); Collins Investment Co. v. Metropolitan Dade County, 164 So.2d 806, 809 (Fla.1964) (noting that "the Legislature is presumed to know the existing law when a statute is enacted"), the majority's interpretation of the 1986 amendment is entirely illogical. As noted by Representative Canady, the only intended consequence of amending the statute was elimination of the situation in which a nursing home resident's death resulted from actions which violated the Act, and the resident was totally without remedy under the Act for such wrongful conduct. The Legislature knew that a continuing remedy for nonlethal violations of the Act survived the death of the nursing home resident under the statutory survival provisions in effect at that time. See id. To construe the 1986 amendment in a fashion which totally abolishes these survival actions entirely unrelated to the legislation at issue is invalidation of the survival statute by implication  a result both patently inappropriate and entirely desultory. See, e.g., Smith v. Lusk, 356 So.2d 1309, 1311 (Fla. 2d DCA 1978) (concluding that "the legislature did not, in fact, impliedly abolish the survival statute by enacting the wrongful death act").
It is my view that the majority's interpretation, as well as the concurring view, of section 400.023 in the instant case contravenes the express purposes for which the Legislature amended this statutory provision in 1986 and is without logical analysis. According to the construction given section 400.023 by the majority and concurring views today, the language inserted into this legislation in 1986 is transformed from the intended and logical text to also clearly recognize civil actions by personal representatives into a statutory roadblock to the compensation of victims' estates for wrongs inflicted upon a decedent prior to his or her death, but not causing death, totally contrary to Florida's survival statute. Indeed, when reduced to its essence, the majority and concurring views concerning the language added in 1986 is an example of improper judicial legislation which absolutely ignores the circumstances surrounding the legislation at issue. The majority interprets the nursing home regulation before this Court in a fashion which improperly adds language to the statute that does not exist. See James Talcott, Inc. v. Bank of Miami Beach, 143 So.2d 657, 659 (Fla. 3d DCA 1962) (stating "we are not free to add words to [a statute to] steer it to a meaning and limitation which its plain wording does not supply"). Indeed, under today's decision, the language of section 400.023 is supplemented in the following fashion: *22 "The action may be brought by the resident or his guardian, by a person or organization acting on behalf of the resident with the consent of the resident or his guardian, or by the personal representative of the estate of a deceased resident when the cause of death resulted from the deprivation or infringement of the decedent's rights," § 400.023, Fla. Stat. (Supp.1986), however, when death has not resulted from the deprivation or infringement of the decedent's rights, the Survival Act does not apply and the survival cause of action for a violation of rights or injuries is lost. This interpretation changes the essential character of the Residents' Rights Act from a vehicle which empowers otherwise vulnerable nursing home residents to seek effective redress for harm inflicted during their institutionalized care into a mechanism providing negligent caregivers an unintended shield from responsibility. Additionally, it is absolutely clear that the amendment to the statute we consider today did not expressly repeal or abolish survival actions under section 46.021, but the majority's analysis and concurring view today causes an implied repeal of survival actions when death has not resulted from a chapter 400 wrong. A very similar argument and result was rejected by the court in Smith v. Lusk in the context of the survival of actions and wrongful deaths.
The concurring view is a striking example of the rationale and conclusions adopted by the majority with which I cannot agree. As noted above, in the scenario in which a Florida citizen dies as a consequence of causes unrelated to tortious violations of chapter 400 rights which occurred prior to death, the decedent's estate retains the resulting cause of action against the tortfeasor under this state's survival statute. See § 46.021, Fla. Stat. (2002). The survival of causes of action under these circumstances is absolutely clear under chapter 46. Likewise, the survival of Gladstone Knowles' cause of action is independently secured by chapter 46 of the Florida Statutes. Under the reasoning adopted today by the majority and concurring opinions, however, a clear violation of the rights of a nursing home resident  unrelated to the subsequent death of that person  will go unremedied and without recourse.
The concurring view analyzes the instant case within the confines of an absolute vacuum, despite the obvious historical circumstances and conflicting statutes which cry out for consideration. Essentially, the concurring view states the statute to be clear without even reference to the entire statute and without analysis of the conflicting survival statute, rendering consideration of all other factors totally extraneous in its result. Despite the concurring opinion's recitations of the meaning of the word "when," see concurring op. at 12-13, the precise contentions were raised, considered, and foreclosed during the litigation which followed enactment of Florida's Wrongful Death Statute. As quoted above, the Williams court specifically noted and dismissed the argument that language allowing for the filing of legal actions simultaneously forecloses all unenumerated actions, ably exposing the argument's illogical nature:
[A]t the heart of this controversy is appellee's contention that the 1972 Wrongful Death Act, by eliminating claims for pain and suffering of a person injured by an act of medical malpractice where death results from such injuries, also eliminated claims for pain and suffering of the injured person (as well as other provable damages) where death did not result from the medical malpractice. We cannot agree with this interpretation. At the risk of oversimplifying what is perhaps a more complex problem, *23 we are inclined to think it is fundamental that the wrongful death statute is not applicable except in wrongful death actions, i.e., where it is claimed that the death of a person was "caused by the wrongful act, negligence, [or] default ..." of another.
Williams, 471 So.2d at 629. Today, the concurring view asserts that the Legislature's choice of the word "when" was intended to mean that an estate may file a cause of action under the Nursing Home Residents' Rights Act on behalf of a decedent exclusively when, and only when, death resulted from a violation of the resident's rights. The reading given to the statutory provision at issue by the concurrence is both uncommonly simplistic and entirely contrary to the settled law of Florida, as exemplified by the Williams decision.
Likewise, reliance upon Kinder v. State, 779 So.2d 512 (Fla. 2d DCA 2000), is totally misplaced. First, the distinguishing differences between the scenario in which it is asserted that a preexisting civil cause of action is abolished by a legislative enactment which authorizes new actions "when the cause of death resulted from the deprivation or infringement of a decedent's rights" and the factual circumstances surrounding the timing of trial in a civil commitment proceeding, as addressed in Kinder, are plain. Kinder has nothing whatsoever to do with an attempted repeal or destruction of a recognized cause of action by implication. Certainly, the Williams decision, which addressed the exact situation faced by the Court today, is correct and should be the controlling law. Just as the situation in the instant case, the Williams court confronted and rejected the argument that language providing for a cause of action actually abolished other actions not also enumerated within the text of the statutory provision at issue. The concurring view is precisely that which was rejected by the Williams court. See Williams, 471 So.2d at 629. Because Kinder and the other cases cited by the concurring view do not at all bear upon this situation, they are entirely inapposite.
It is extraordinarily twisted that the Legislature's attempt to shield the elderly from abuse through an expansion of the right of estates to file actions for conduct causing death is today used as a weapon against the survival rights of former nursing home residents' estates. The 1986 amendment of section 400.023(1) was never intended to restrict actions or complaining parties under the Nursing Home Residents' Rights Act; indeed, the legislative history of the Act reflects that the provision interpreted by this Court today was designed with the opposite goals in mind.
The majority also contravenes essential tenets of statutory construction. First, statutes remedial in nature are liberally construed to "preserve and promote access to the remedy intended by the legislature." Joshua v. City of Gainesville 768 So.2d 432, 435 (Fla.2000); see also Brill v. Jewett, 262 F. 935, 937 (5th Cir.1920). A reading of section 400.023 in pari materia with the provisions of the Wrongful Death Act must be tempered by the presumption that each statutory provision was intended to provide different and distinct remedies. Indeed, section 400.023 specifically provides that its remedies "are in addition to and cumulative with other legal and administrative remedies available to a resident." § 400.023(1), Fla. Stat. (1997). Such provision must also be applied consistent with Florida's survival statute.
Consistent with the interpretation of section 400.023 by the Fourth District panel in Greenfield v. Manor Care, Inc., 705 So.2d 926 (Fla. 4th DCA 1997), which I would adopt here, the Florida Legislature again amended section 400.023 in 2001 *24 when this artificial defense arose to clarify its intent that the personal representative of a deceased nursing home resident's estate may file a cause of action against a nursing home for violations of the deceased's rights "regardless of the cause of death." § 400.023(1), Fla. Stat. (2001). Surprisingly, the majority today holds that "the 2001 revisions [are] of no moment with regard to the particular issue in this case." Majority op. at 5 n. 1. This startling conclusion, without justification or support, is directly contrary to this Court's precedent deeming such amendments probative as "a clarification of legislative intent." State v. Paul, 783 So.2d 1042, 1053 (Fla.2001); see also Ivey v. Chicago Ins. Co., 410 So.2d 494, 497 (Fla.1982) ("The Court has the right and duty, in arriving at the exact meaning of a prior statute, to consider subsequent legislation."). This Court has also held that when "an amendment to a statute is enacted soon after controversies as to the interpretation of the original act arise, a court may consider that amendment as a legislative interpretation of the original law and not as a substantive change thereof." Metro. Dade County v. Chase Fed. Housing Corp., 737 So.2d 494, 502 (Fla.1999) (emphasis supplied) (quoting Lowry v. Parole and Probation Comm'n, 473 So.2d 1248, 1250 (Fla.1985)); see also Palma Del Mar Condo. v. Commercial Laundries of W. Fla., 586 So.2d 315, 317 (Fla.1991) (holding that courts may properly consider subsequent legislation to determine the intent of a previously enacted statute, particularly after "a judicial interpretation [of] the original enactment ... which the legislature believed was contrary to its original intent"). When the 2001 amendment to section 400.023 is considered along with the original act and the survival statute, it is plain that Mr. Knowles' personal representative should be permitted to proceed with the instant chapter 400 cause of action which survived his death. I suggest that the irrationality of the majority's result is demonstrated upon review of Florida Convalescent Centers v. Somberg, 840 So.2d 998 (Fla.2003). According to the majority, one who sustains a deprivation of chapter 400 rights which does not result in death has no action under the Survival Act if an unrelated death occurs, but under Somberg, one who dies as a result of such violation has both a chapter 400 action and a wrongful death action. This, in my view, is judicial inconsistency at its zenith.
Florida's large percentage of elderly with a high number living in nursing homes have today lost significant protection under the majority's interpretation of chapter 400. The Nursing Home Act, properly interpreted, reflects the legislative plan to protect the interests of these citizens who are forced to avail themselves of nursing home care. See Garcia v. Brookwood Extended Care Ctr., 643 So.2d 715 (Fla. 3d DCA 1994). It must be understood that the majority today does not merely limit the rights of nursing home patients, it totally eliminates the right of action the Legislature established, ignores the proper application of the survival statute, and does so by unilaterally adding language to the statute at issue abolishing survival actions by implication in an unprecedented fashion. The feared situation enunciated by the First District Court of Appeal in Williams v. Bay Hospital has today come to pass: "[M]edical providers or others [are] free to negligently injure patients with impunity, so long as death [does] not result from the injuries." 471 So.2d at 629. The majority has today truly created a sad day for Florida's senior citizens. It is particularly troublesome, because it does so in a total vacuum, fails to address the well-established law at the time of statutory amendment, refuses to even consider available legislative history *25 and information, and concludes with the thought that chapter 400 remedies are not that important because common law negligence is available. A court wearing such blinders has, in my view, demonstrated a serious lack of consideration of the applicable law. Based upon the foregoing, I would answer the certified question in the affirmative, and quash the Fourth District's decision below.
QUINCE, J., concurs.
NOTES
[1] We are aware that during the pendency of this proceeding, the 2001 Legislature amended the statutory provisions at issue in this case. See ch.2001-45, 4, Laws of Fla. (amending 400.023(1), Fla. Stat.); 400.023(1), Fla. Stat. (2001). Under the current version of the statute, which went into effect on May 15, 2001, the personal representative of the estate of a deceased resident may file a cause of action against the nursing home for violations of the deceased resident's rights "regardless of the cause of death." 400.023(1), Fla. Stat. (2001). Both parties have filed supplemental authority in effect asking us to interpret whether this new amendment was a clarification of the rights of a personal representative or if it was a wholesale revision to the law, and if so whether the Legislature intended the revisions to apply retroactively. The changes in section 400.023(1) were substantial and the legislative history is silent as to why the particular change in question, i.e., the expansion of a personal representative's right to bring a cause of action "regardless of the cause of death," was made. Therefore, although we have considered the changes, we find the 2001 revisions to be of no moment with regard to the particular issue in this case.
[2] Similarly, the U.S. Supreme Court has also cautioned against blindly following statutory language without considering the policy of a particular law:

The policy as well as the letter of the law is a guide to decision. Resort to the policy of a law may be had to ameliorate its seeming harshness or to qualify its apparent absolutes.... The process of interpretation also misses its high function if a strict reading of a law results in the emasculation or deletion of a provision which a less literal reading would preserve.
Cox v. Roth, 348 U.S. 207, 209, 75 S.Ct. 242, 99 L.Ed. 260 (1955) (quoting Markham v. Cabell, 326 U.S. 404, 409, 66 S.Ct. 193, 90 L.Ed. 165 (1945)).
[3] The trial court instructed the jury:

Florida statute section 400.022 provides that nursing home residents have the following rights under Florida law and that all licensees of nursing home facilities shall treat their residents in accordance of the following rights: ... [court lists rights].
Violation of this statute is negligence. If you find that a person alleged to have been negligent violated this statute, such person was negligent. You should then determine whether such negligence was the legal cause of the loss, injury or damage complained of.
[4] Petitioner also argues that the court below, in adopting Judge Warner's dissent from Greenfield, improperly holds that the statutory rights provided by section 400.023(1) are "largely personal to the resident of the facility" and thus do not survive the resident's death under section 46.021. Contrary to petitioner's assertion, neither the court below nor Judge Warner in her dissenting opinion in Greenfield stated that personal rights do not survive the death of the resident. Rather, Judge Warner explained that the rights listed in section 400.022 are "largely personal to the resident of the facility." She further explained that she could conceive valid policy reasons why the Legislature would limit the cause of action to violations that caused the resident's death; vindication for violation of several of the rights listed in section 400.022 would not bring any personal satisfaction to the resident after death. Thus, this claim appears to be without merit because the court below did not hold that no personal claims survive the death of the resident.
[5] The dissent claims that the majority adds the following clause to the statute: "however, when death has not resulted from the deprivation or infringement of the decedent's rights, the Survival Act does not apply and the survival cause of action for a violation of rights or injuries is lost." Dissenting op. at 22.
[6] I cite these cases as examples of how we understand clauses of limitation in statutes. Clearly, these cases do not concern the same statute we consider here.
[7] The complete abolition at death of a nursing home resident's civil action based upon violation of section 400.022 which caused the resident's death is not before the Court in this action.